DAVID A. MEIER, Plaintiff-Appellee, v. AETNA LIFE AND CASUALTY STANDARD FIRE INSURANCE COMPANY *et al.*, Defendants-Appellants.

Second District   No. 85—0550

Opinion filed November 20, 1986.

David A. Novoselsky, of Chicago, and Barbara L. Hayes, of Gooding & Schroeder, Ltd., of Geneva, for appellants.

Richard T. Petesch, Stuart L. Whitt, and Susan S. Russo, all of Matthews, Dean, Simantz, Hem & Whitt, P.C., of Aurora, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

This appeal involves a suit filed by plaintiff, David A. Meier, in the circuit court of Kane County, seeking a judgment against Aetna Life and Casualty Standard Fire Insurance Company (Aetna) and General Associates Insurance Agency, Inc. (General Associates), based on a policy issued by defendant Aetna on March 23, 1982. Under that policy, plaintiff alleged that his auto was insured for the sum of $5,000 less a deductible of $100. In addition to the face value of the policy, the court found that the plaintiff was entitled to the following: (1) $5,898 in attorney fees for plaintiff to succeed on this claim; (2) $2,597.50 in attorney fees for plaintiff to defend his judgment after defendant filed a motion to reconsider; and (3) pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 767), the court assessed $1,250 against the defendant and awarded $407.40 in "other costs."

The plaintiff testified at trial that he purchased his 1962 Chevrolet in 1978 from a private party. The price of the vehicle was $1,000. He initially purchased insurance from a company other than Aetna, obtaining liability insurance but no coverage for damage to the vehicle.

The Chevrolet was painted the next spring for approximately $500. The original engine was replaced with another. Following the first repainting, plaintiff became dissatisfied with the body work and took the car to another body shop. The car was then repainted a shade of red matching the car's original color. Plaintiff testified that, in his opinion, the car was worth $5,000. He based his opinion partly upon his belief that it was a rare automobile and, additionally, upon the repairs he had undertaken to have done on the car.

Plaintiff testified that sometime after this repair work, he was contacted by his insurance agent from General Associates, with whom he already had homeowner's insurance. He stated that his agent offered him a better deal for auto coverage than he had at that time, so he decided to insure his car with General Associates and to terminate his insurance with his other carrier. When the agent from General Associates interested plaintiff with its auto plan, plaintiff told the agent he wanted to insure his vehicle for $5,000. To obtain such coverage, plaintiff understood he would pay increased premiums. This coverage was offered to plaintiff by General Associates' agent as "stated amount insurance." The agent related at trial that "stated amount insurance" is offered when the ordinary valuation method, the published "book value," is not available. Since such estimates were not available for an auto as old as plaintiff's 1962 Chevrolet, the agent of-

fered the alternative coverage wherein the insurer will insure the actual value of the vehicle. General Associates required that an appraisal from a qualified appraiser be provided, along with two photographs of the car, to establish the value of the car.

The agent gave no instruction regarding where plaintiff was to obtain the appraisal, whereupon plaintiff contacted someone he knew, the owner of a Chevrolet dealership, who had experience in appraising automobiles. The appraisal was completed and submitted with two photos of the automobile. The insurance agent received these items, made no further inquiry as to the accuracy of the appraisal or photos, and forwarded them to the principal, Aetna.

Subsequently, in September 1982, plaintiff had an accident in this insured vehicle, striking a guard rail, damaging the passenger side of the car, and coming to rest in a ditch. He was later informed by the owner of the body shop that towed his car that the engine of plaintiff's car had ignited and burned while being towed.

Upon notice from General Associates of this accident, Aetna assigned a claim representative, Carter Janecek, to handle plaintiff's claim. Janecek's title was senior auto claim representative. He had been with Aetna for 2½ years at the time of this accident. Janecek was responsible for determining the loss to the vehicle. He personally viewed the damaged automobile and determined it to be a total loss; when he looked at the car, he jotted down a few things about its options and what had been damaged. Janecek stated that it is the policy at Aetna, in arriving at the total value of the car, to feed certain information gained from inspecting the damaged car into a computer service called Certified Collateral. Certified Collateral then provides Aetna with an estimate of the value of the car. Janecek testified that he had no idea how Certified Collateral comes up with the final value figures.

Certified Collateral returned a figure of $2,000, which was then offered to plaintiff by Janecek. Plaintiff refused the offer, telling Janecek that the car was insured for $5,000.

After Janecek and Aetna became aware that plaintiff had retained counsel, an appraiser familiar with older model vehicles was hired by Aetna to assess the preaccident value of plaintiff's car. He examined the damaged vehicle and declared its preaccident worth to be $2,200.

On cross-examination Janecek testified that he had been trained as a claim adjuster by Aetna and that he was familiar with the procedures for handling insurance claims and settlements in Illinois, specifically, Rule 9.19 of the Illinois Department of Insurance. This rule is promulgated pursuant to statutory authority (Ill. Rev. Stat. 1985, ch.

73, par. 1013) and is designed to implement specific sections of the Illinois Insurance Code (hereinafter Code) (Ill. Rev. Stat. 1985, ch. 73, pars. 766.5, 766.6). The pertinent portion of Rule 9.19, in relation to these facts, states that if the value of a car is not published in a recognized source, the insurance company must secure at least two written, retail-value dealer quotations and base settlement on them. If two dealer quotations are not obtainable, such deviation from the rule requirements must be specifically detailed and documented, including particular information about the condition of the automobile. Janecek testified that he did not comply with any of these procedures. He stated that it was his belief that the rule was not in effect at the time of the accident. An examination of the rule shows that it was, in fact, operative at the time of the accident.

■ We must initially address a procedural challenge by plaintiff to defendants' ability to maintain this appeal. This court has previously considered plaintiff's motion to dismiss the appeal, and we stand on our previous reasoning in denying that motion. Plaintiff urges another argument upon this court regarding the proper procedure under Supreme Court Rule 323 for filing the report of proceedings. (87 Ill. 2d R. 323.) Again we find it unnecessary to reach the merits of this issue, for the principal report of proceedings was appropriately filed and provides this court with ample evidence upon which to assess the propriety of the determination of the trial court. The burden is on the appellant to provide the record. Any doubts which may arise from incompleteness of the record will be resolved against the appellant. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389; *Evink v. Pekin Insurance Co.* (1984), 122 Ill. App. 3d 246, 251.) Therefore, the defendant's failure to adhere to Rule 323 can result in no detriment to the plaintiff.

■ Defendants raise two basic issues on appeal: (1) whether the trial court properly found for plaintiff on a public policy basis and excluded evidence of the actual value of the vehicle and (2) whether the trial court erred in finding that defendants had acted in bad faith in delaying proper settlement of plaintiff's claim. For the reasons set forth herein, the decision of the trial court is affirmed.

We turn to consideration of defendant's contention that the trial court improperly relied upon sound public policy as a basis for denying defendants the opportunity to challenge plaintiff's assertion of the value of the vehicle. The trial court held:

> "it is against public policy to allow an insurer to establish a means by which a vehicle's value is to be determined, accept that means, set a premium based thereon, and then attempt to deny that value at a later date as being initially incorrect or in-

valid."

However, the reasons given for a certain judgment by the trial court are not material if the judgment is correct. (*Perimeter Exhibits, Ltd. v. Glenbard Molded Binder, Inc.* (1984), 122 Ill. App. 3d 504, 512; *McCann v. Lisle-Woodridge Fire Protection District* (1983), 115 Ill. App. 3d 702, 708.) The reviewing court will affirm a judgment upon any legal grounds which have support in the record. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 385.) The public policy rationale for ruling in plaintiff's favor is therefore irrelevant here.

The trial court, upon the same reasoning, might have found for plaintiff on a theory of estoppel. To rely upon estoppel plaintiff must show (1) he was misled by the acts or statements of the insurer or its agents, (2) reliance by the insured on the representations of the insurer, (3) the reliance was reasonable, and (4) the reliance was to the detriment of the insured. (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 304-05.) Plaintiff has set forth the successful solicitation of his business by the agent of General Associates, based upon her representations of certain coverage, in deciding to terminate his relationship with another insurer. No further inquiry was made nor confirmation sought in regard to the information the plaintiff supplied the insurer, leading plaintiff to reasonably assume the information was sufficient to establish the value of the car. Finally, the insured was obligated to and did pay an enhanced premium for this special coverage, resulting in a financial detriment. This court is charged only with determining on review whether a manifest abuse of discretion can be found in the actions of the trial court. (*Stilwell v. Continental Illinois National Bank & Trust Co.* (1964), 31 Ill. 2d 546; *State Farm Mutual Automobile Insurance Co. v. Hanson* (1972), 7 Ill. App. 3d 678, 686.) We find that plaintiff satisfactorily established the necessary elements of estoppel before the trial court.

Estoppel implies prejudicial reliance by the insured upon some conduct, act, or nonaction of the insurer. (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 304-05; *Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 868.) Estoppel may be found even though the insurer intended neither to mislead nor to relinquish its own rights. (*National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 59; *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 304-05.) Defendants argue that since their agent never obtained her own appraisal, she *had* to rely upon the integrity and veracity of plaintiff's appraisal but that such reliance was never intended to waive any rights to challenge the

insured's representations of value. Estoppel requires no intent to mislead by insurer. One must look instead to the reasonableness of the insured's reliance.

■■ For the plaintiff to rely upon estoppel, it must be pleaded. (*Beck v. Capitol Life Insurance Co.* (1977), 48 Ill. App. 3d 937, 942.) In his amended complaint, plaintiff has clearly set forth the necessary elements to establish a cause of action in estoppel. The ruling of the trial court on a different ground does not preclude plaintiff's reliance upon this ground in a court of review.

■■ ■ Defendants do not contest the clarity of the language of the insurance contract. In fact, they acknowledge the plain language "stated value insurance" for $5,000, but hope to dispute the actual value of the car. The language used by the insurer should be considered in light of the natural response that language would evoke in any prospective policyholder. (*Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 680.) The language used by General Associates' agent, both written, as "stated value insurance," and oral, in her affirmative response to plaintiff's question as to whether he was insured for $5,000, could be reasonably interpreted by plaintiff to indicate a binding promise that $5,000 represented the value of his car. Any ambiguity in the insurance application is to be construed in favor of the insured and against the insurer who seeks to limit his liability. (*Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336; *Quarles v. Nationwide Insurance Co.* (1978), 66 Ill. App. 3d 455, 462.) In *Dobosz* the court reasoned that the estoppel concept, in relation to insurance contracts, is based upon the concept that, where the insurer's representations, through its agents or advertising materials, are designed to and do result in purchaser buying a certain policy, those representations by the insurance company and the reasonable expectations of coverage created thereby will bind the insurer. (*Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 680.) In the present case we have similar representations made extraneous to the actual contract language that served to induce plaintiff to abandon his former insurer to purchase a special coverage as represented by defendant's agent.

■ It is also the law that a certain burden remains on the insurer issuing the policy to make timely inquiry into facts upon which insurer intends to rely in deciding whether to issue a policy where such facts are implausible or any doubtful representation by the insured exists. (*Boyles v. Freeman* (1974), 21 Ill. App. 3d 535, 539.) It has been held that under Illinois law an insurer who issues a policy with notice of an insured's medical history is estopped from using that medical

condition to defeat the insured's claim. *Smith v. Metropolitan Life Insurance Co.* (N.D. Ill. 1982), 550 F. Supp. 896, 898.

■■ The law is clear in Illinois that in the absence of fraud or intentional misrepresentation to the insurer, the good-faith actions and responses of the insurance applicant operate as a shield from the possibility of the insurer placing all risk of error on the insured. The court in *Beck* recognized that "[t]o allow the defendant insurer to repudiate the contract on the ground of its own agent's unskillfulness would be decidedly unjust and contrary to public policy." (*Beck v. Capitol Life Insurance Co.* (1977), 48 Ill. App. 3d 937, 942.) In the present case, once the agent had offered "stated value" coverage to induce plaintiff to give up his other carrier, with the only requirements being the submission of an appraisal and photos by the plaintiff, the agent cannot be heard later to complain that the actual value of the car is less. The responsibility falls squarely upon the agent " 'to ascertain the actual facts about this risk, and in his report to the company must, where no fraud or intent to deceive on the part of the applicant is shown, be conclusive upon it.' " (*Beck v. Capitol Life Insurance Co.* (1977), 48 Ill. App. 3d 937, 941, quoting *Royal Neighbors of America v. Boman* (1898), 177 Ill. 27, 32; see also *Mollihan v. Stephany* (1977), 52 Ill. App. 3d 1034, 1040.) The insured is insulated from liability by acting in good faith to disclose the complete facts to the insurer. (*Tesluk v. Metropolitan Life Insurance Co.* (1970), 130 Ill. App. 2d 290, 294.) For the insurer to avoid the terms of the policy under such conditions, the facts provided by the insured must not only be proved false, but also that the insured knows them to be false. (*Boyles v. Freeman* (1974), 21 Ill. App. 3d 535, 539.) There is no proof in this case that plaintiff acted in any manner to deceive the insurer as to the value of his automobile.

■■ Lastly, the appellant contends that the trial court abused its discretion in finding that the defendant's conduct in handling plaintiff's claim was vexatious and unreasonable within the meaning of section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 767). The granting of fees and penalties pursuant to section 155 is entrusted to the sound discretion of the trial court. (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 209; *Songer v. State Farm Fire & Casualty Co.* (1980), 91 Ill. App. 3d 248, 253.) Absent an abuse of discretion, the ruling of the trial court will not be disturbed. *Fassola v. Montgomery Ward Insurance Co.* (1982), 104 Ill. App. 3d 825; *Deverman v. Country Mutual Insurance Co.* (1977), 56 Ill. App. 3d 122, 124.

The lower court here, in addition to granting judgment for the

plaintiff, awarded plaintiff attorney fees and costs and assessed a penalty against the defendant. At a separate hearing on the issue of attorney fees and costs, the trial court acted under the authority of section 155, which allows "reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs." Ill. Rev. Stat. 1983, ch. 73, par. 767(a).

■■ As defendant properly points out, merely the refusal to settle a claim on the insured's agreed terms is not vexatious *per se*; however, the trial court can undertake a determination of vexatiousness based upon a consideration of the totality of the circumstances. (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 209; *Marvel Engineering Co. v. Commercial Union Insurance Co.* (1983), 118 Ill. App. 3d 844, 854-55; *Fassola v. Montgomery Ward Insurance Co.* (1982), 104 Ill. App. 3d 825.) If the court's finding is supported by instances of conduct appearing in the record, it should be affirmed. *National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 209.

■■ It was undisputed at trial that Aetna's claims adjuster, Carter Janecek, arrived at his settlement figure of $2,000 as a preaccident total value of this vehicle based solely upon his observations of the post-accident wreckage as related to Certified Collateral. Janecek admitted that he had no idea how Certified Collateral arrived at an automobile's value. Following the price quote from Certified Collateral, and without consultation with any other resource, Janecek set the value of the auto at $2,000 and found it to be a total loss. Janecek stated that his duties required him to be familiar with the proper procedures of handling claims and settlements. He also acknowledged that the claims practice under Rule 9.19 of the Department of Insurance required that where an automobile value is not published in a recognized source, an insurance company must secure at least two written, retail-value dealer quotations as the basis for settlement. If the two dealer quotations can't be obtained, such a problem must be documented in writing, with specific information about the car's condition. Janecek admitted he did none of this. His sole reason for such failure was his belief that the rule was not in effect at the time. It was established at trial that said rule was of valid force and effect at the time of the accident.

In *Fassola* the court found that failure to comply with Rule 9.19, in certain aspects that are applicable to the present case, would result in liability of the insurer under section 767 of the Code. (*Fassola v.*

*Montgomery Ward Insurance Co.* (1982), 104 Ill. App. 3d 825.) That court asserted that where an insured auto is damaged, the insurer has a duty to specify the preaccident condition of the auto so that the required dealer quotations of Rule 9.19 will include such condition in the estimate. (*Fassola v. Montgomery Ward Insurance Co.* (1982), 104 Ill. App. 3d 825, 831.) Certain dictates of Rule 9.19 were also held mandatory:

> "The market value quotations received by the Insurers from dealers must be written, as the insurance regulations require, and they must indicate what information was given to the dealer about the pre-accident condition of the comparison auto, and how such pre-accident condition affects the dealer's assessment of the retail value of the auto. Documentation is the requirement of the insurance regulations, and documentation, specific and in the record, is what is required when assessing the retail value of older model autos which are determined to be a total loss." *Fassola v. Montgomery Ward Co.* (1983), 104 Ill. App. 3d 825, 832.

The defendant in the instant case clearly violated the standards set forth above. Considering the record and the totality of the circumstances, we therefore hold that the court had ample evidence upon which to assess fees and costs against the insurer.

■■ Lastly, appellees request reasonable attorney fees and costs in defending this appeal. In Illinois, attorney fees may not be awarded absent an express contractual arrangement or a statute providing for fees. (*Thornton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365; *Kerns v. Engelke* (1979), 76 Ill. 2d 154.) The trial court below determined that, under the applicable section of the Code (Ill. Rev. Stat. 1985, ch. 73, par. 767), defendants were liable for plaintiff's costs and attorney fees, holding that Aetna's claim representative's complete disregard of Rule 9.19 of the Department of Insurance rose to the level of unreasonable and vexatious conduct under the statute.

■■ Where, based upon statutory authority, a trial court has awarded attorney fees at the trial level, the reviewing court has been willing, where appropriate, to affirm the trial court's award and to interpret the statutory authority to also apply to appellate proceedings and to thereby grant attorney fees for the prevailing party's work on appeal. (See, *e.g., McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 210 (under former section 41 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 41) providing for awards for false pleading); *In re Estates of Azevedo* (1983), 115 Ill. App. 3d 260, 265 (under section 506 of the Illinois Marriage and Dis-

solution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 506) providing for compensation for an attorney appointed to represent a child in divorce proceedings).) Neither of the statutory provisions relied upon in *McCormick* or *Azevedo* specifically mentions "appeals."

The court in *Martz*, in determining not to award fees, reasoned that where the appeal was taken in good faith and founded on a legitimate legal defense raising an issue of first impression in the jurisdiction, such action was not deemed to be unreasonable and vexatious within the meaning of the statute. (*Martz v. Union Labor Life Insurance Co.* (N.D. Ill. 1983), 573 F. Supp. 580, 586; see also *Tarzian v. West Bend Mutual Fire Insurance Co.* (1966), 74 Ill. App. 2d 314, 331.) The *Martz* court found that "[e]ven the single precedent was arguably distinguishable from the case at hand." *Martz v. Union Labor Life Insurance Co.* (N.D. Ill. 1983), 573 F. Supp. 580, 586.

■■ In the instant case, the lower court properly found defendant to have acted in clear contravention of the mandate of the Department of Insurance. Unlike the *Martz* and *Tarzian* cases, here both the departmental Rule 9.19 and the pertinent case law cited earlier in this opinion demonstrate an unambiguous violation of Aetna's duty as an insurer. The defendant fails to introduce any evidence or argument on appeal to justify such conduct. Defendant's decision to force this very issue once more on appeal constitutes a continuing course of conduct violative of section 155 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 767). More so than at the trial court level, the appeal is the needless extension of litigation causing appellee unnecessary expense. We find this to be true only of the issue involving defendant's liability under section 155 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 767).

The public policy underlying section 155 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 767) evinces an attempt to prevent harm to the insured from the misconduct of his insurer. (*Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111.) The policy was defined thusly in *Debolt*:

> "We are of the opinion that the legislature has intended to provide a remedy to an insured who encounters unnecessary difficulties with an unreasonable and vexatious insurance company. The insured can maintain an action on the contract for recovery of withheld policy benefits and upon proper finding by the court can be awarded attorney fees in addition to all other costs." (*Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 116.)

(See also *McCall v. Health Care Service Corp.* (1983), 117 Ill. App. 3d

944

107, 111; *Glenview Park District v. Redemptorist Fathers* (1980), 89 Ill. App. 3d 623, 629. But see *M & W Gear Co. v. AW Dynamometer, Inc.* (1981), 97 Ill. App. 3d 904.) This policy is promoted when costs and attorney fees are appropriately granted to the prevailing insured by making the insured whole financially and in exacting punitive measures from the obstreperous insurer. To interpret section 155 to apply only to the trial court proceedings would be to allow an insurer whose financial resources are grossly disproportionate to those of the insured to escape the statute's protections by appealing and punish the insured by whittling away at his judgment with further litigation. Such a result cannot be countenanced under the policy section 155 is designed to further.

For the reasons cited herein, the decision of the trial court is affirmed. We award fees and costs of appeal to the appellee and remand the cause to the trial court for the taking of evidence for a determination of reasonable attorney fees and costs.

Affirmed and remanded.

UNVERZAGT and STROUSE, JJ., concur.