**David ROSENBURG and Melia Rosenburg, Plaintiffs–Appellees,**

**v.**

**LINCOLN AMERICAN LIFE INSURANCE COMPANY, a Corporation, Defendant–Appellant.**

**No. 88–3082.**

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1989.

Decided Aug. 28, 1989.

Robert Bosslet, Granite City, Ill., for plaintiffs-appellees.

Ronald A. Roth, Bernard & Davidson, Granite City, Ill., for defendant-appellant.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WILL, Senior District Judge.*

WILL, Senior District Judge.

David and Melia Rosenburg, plaintiffs, brought this action against Lincoln Ameri-

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

can Life Insurance Company ("Lincoln"), defendant, alleging that Lincoln contracted to provide life insurance for them and their children and that Lincoln engaged in unreasonable and vexatious conduct in denying their claim for benefits following the death of one of their children. The plaintiffs also alleged that Lincoln engaged in fraud during the insurance application process. Federal jurisdiction is based on diversity—the plaintiffs are Illinois residents and Lincoln is a Delaware corporation with its principal place of business in Indiana.[1]

Lincoln moved for a directed verdict during the trial. Its motion was granted as to the plaintiffs' fraud allegations but denied as to their breach of contract claim and allegations of unreasonable and vexatious conduct. The jury returned a special verdict in favor of the plaintiffs, finding that an insurance contract existed and that Lincoln's refusal to pay was unreasonable and vexatious. The district court entered judgment in favor of the plaintiffs and awarded damages as found by the jury. The district court also awarded costs, fees and a penalty based on Lincoln's unreasonable and vexatious conduct, pursuant to ILL.REV. STAT., ch. 73, para. 767(1) (1986).

Lincoln's motion for judgment notwithstanding the verdict ("JNOV") on the plaintiffs' breach of contract and unreasonable and vexatious conduct claims was denied. Lincoln's motion for a mistrial based on alleged inflammatory and prejudicial statements made by the plaintiffs' attorney was also denied.

Lincoln appeals from the denial of its motion for JNOV and further claims that certain evidence was erroneously admitted and other evidence was overly prejudicial, so that it was denied a fair trial, and that its tendered jury instructions were unreasonably rejected. After oral argument, the plaintiffs filed a motion for attorney's fees and costs incurred in opposing Lincoln's appeal. We affirm the judgment below

and grant the plaintiffs' motion for fees and costs.

## BACKGROUND

David Rosenburg was and presumably still is a police officer for Granite City, Illinois. He and his wife Melia had three children, one of whom, Desiree, was born on July 9, 1985 with a heart defect which required surgery when she was six months old. As far as we know, their other children were relatively healthy.

On September 4, 1984, Kevin Wedmore, a Lincoln agent, sent a letter to Joe Miklovic, who was the comptroller for Granite City, regarding a life insurance program (the Municipal Employees Insurance Program) offered by Lincoln to city employees, elected officials and their dependents. The letter stated that $10,000 term insurance policies were "guarantee issue" regardless of the group participation level. In other words, policies would issue to all employees who applied, regardless of the number of eligible employees who applied for insurance under the program.

In October 1984, Wedmore, then a Vice-President of Conseco, Inc., Lincoln's parent company, attended the Illinois Municipal League Conference in Chicago. While there, he spoke with Joe Miklovic about the insurance program and Miklovic told Wedmore to talk to him in the spring after the mayoral election. Wedmore contacted Miklovic in April 1985 and a date was set for Lincoln to present its program to the Granite City insurance committee.

A presentation was given to the city council by Wedmore and Frank Adelman. According to Wedmore, the city council was told that the issuance of policies would be guaranteed (no under-writing) provided that 40% of the employees and elected officials participated. Premiums would be deducted from employees' paychecks and forwarded to Lincoln via the Granite City Payroll Department. Miklovic testified at trial,

---

**1.** The amount in dispute at trial was $12,112.00, sufficient to establish diversity jurisdiction at the time the case was filed in federal court. Under current law, however, this would not be a federal case since "the matter in controversy"

must be at least $50,000.00. 28 U.S.C. § 1332(a) (1988). *See* Pub.L. No. 100–702, Title II, §§ 201, 203, 102 Stat. 4646 (1988) (the $50,000.00 minimum applies to all civil cases filed on or after the 180th day after November 19, 1988).

however, that a 40% requirement was not mentioned at either presentation and that Adelman indicated that no physical exams were required. As previously noted, Wedmore's letter to Miklovic indicated that the insurance policies were "guarantee issue" regardless of the number of eligible employees who applied for insurance.

In late July 1985, Wally Sheridan, another Lincoln agent, made presentations to various Granite City departments during which, according to the testimony of Lincoln agent Charles Roberson, a 40% minimum participation was disclosed. In addition, according to Roberson, it was also disclosed that the issuance of policies for dependents was not guaranteed.

Connich Koch, Granite City Payroll Supervisor, attended one of the presentations. She testified that the Lincoln agent said that if people signed up that day, they and their family would be insured at that moment and no medical exams would be required, even for those with medical problems. According to Koch, the agent said that if employees waited until next month to sign up, insurance coverage probably would not be guaranteed without an exam. She also testified that there was no mention of a 40% minimum participation.

A presentation was made by Lincoln to the Granite City police department on July 23, 1985. David Rosenburg did not attend. Later that day, however, Rosenburg was approached by Paul John, a Lincoln sales agent. John testified that he explained the insurance program to Rosenburg, including a 40% minimum participation for guarantee issue policies. Rosenburg testified that a 40% minimum participation was not discussed and that John said that no medical exams were required for guaranteed insurance.

Rosenburg also testified that he initially told John that he was not interested because, with the exception of his daughter Desiree, he and his family already had insurance. He explained his daughter's medical problems and indicated that it had been impossible to get insurance for her. According to Rosenburg, John said that Lincoln's policy was different and that Desiree's application could not be refused.

Rosenburg called John on July 24th, the next day, saying that he wanted to apply for insurance. John came to Rosenburg's office with four applications, one for Rosenburg and one for each of his three children. Rosenburg supplied information to John, who filled out the applications, including medical histories of Rosenburg and his children. Rosenburg then signed the applications and a payroll deduction card.

Charles Roberson was also present at this meeting and he represented himself as John's supervisor (although he identified himself at trial on direct examination as a general agent). Rosenburg testified that Roberson confirmed that the insurance was guaranteed without regard to medical history and that a physical exam was not needed. In addition, Rosenburg testified that he asked both John and Roberson what would happen if he signed that day and something immediately happened to Desiree. According to Rosenburg, they said she would be covered. Ailene Shaw, a Lincoln Administrative Assistant, testified that the company was aware that agents had represented that Lincoln was providing guaranteed coverage to dependents in other cities and had compiled a list of cities where such "misrepresentations" had occurred.

Questions 11 and 12 on the applications signed by Rosenburg were to be answered only if one was applying for simplified underwriting but were to be omitted if one was applying for guarantee issue. Although Mr. Rosenburg testified that no representative explained the difference between simplified writing or guarantee issue or mentioned a 40% participation requirement, answers were filled out for questions 11 and 12. However, as previously noted, Rosenburg answered questions asked by John, and John filled out the application forms.

The next paragraph on the applications contained the following sentence in bold type: "The effective date of coverage will be the date of approval at the Home Office, subject to valid payment of the first premi-

um." The plaintiffs' applications were forwarded to Lincoln's Home Office and Desiree Rosenburg's application was reviewed by Barbara Williams, a Lincoln underwriter. Williams ordered a medical report from Desiree's doctor, Dr. Thomas Martin. The report was received on August 29, 1985. After reviewing the report and based on underwriting manuals, Williams denied Desiree's application and the Rosenburgs received a rejection letter for Desiree on September 5, 1985, based on her medical history. Mr. Rosenburg then called Lincoln and was told that the coverage for dependents was not guaranteed and that any coverage for employees was only guaranteed if 40% of the eligible employees participated. According to Mr. Rosenburg, Ms. Williams indicated to him that Lincoln's agent, John, had apparently misrepresented the policy to him.[2]

Before the Rosenburgs received a rejection letter, the Granite City Payroll Department withheld the first month's premium for all four policies from Mr. Rosenburg's paycheck. On October 17, 1985, Karen Fleck, a Lincoln salary savings specialist, sent a refund check representing the premium for Desiree's application ($4.33) to the Rosenburgs, treating it as an overpayment on Mr. Rosenburg's three other policies. However, the Granite City Payroll Department withheld the $4.33 for Desiree's application from Mr. Rosenburg's account for the next two months until Connie Koch received notice from Lincoln to discontinue deducting a premium for her application from his paycheck. Mr. Rosenburg did not cash the three premium refund checks. Desiree Rosenburg died on

November 22, 1985. The Rosenburg's subsequent claim for insurance benefits was denied.

Lincoln moved in limine to exclude testimony regarding previous statements made by Miklovic and John. The motion was denied. During the trial, Lincoln objected to several allegedly prejudicial or inflammatory statements made by the plaintiffs' counsel and many objections were sustained. The district court directed the jury to disregard portions of the plaintiffs' counsel's opening statement in which he said that Rosenburg talked to twenty-nine people who allegedly had heard misrepresentations by Lincoln agents. These persons did not testify although, as previously noted, several witnesses who did testify stated that the terms of insurance were misrepresented. The plaintiffs' attorney also made a closing statement which was objected to at various points but the objections were overruled.

Following the jury's verdict, judgment was entered for the plaintiffs and damages were assessed (by the jury) at $12,112.00, the value of the life insurance policy. Pursuant to Ill.Rev.Stat. ch. 73, para. 767(1) (1986), the plaintiffs moved for an award of attorney's fees, costs and a penalty for Lincoln's unreasonable and vexatious refusal to pay. The district court awarded the plaintiffs costs of $2,951.75, $10,065.00 in attorney's fees and $3,028.00, the maximum penalty in this case.[3]

## STANDARDS OF REVIEW

■ This is a diversity case and there is no dispute that Illinois law applies for is-

---

**2.** The plaintiffs do not claim that, assuming a medical exam was a condition to Lincoln's approval of Desiree's application, the rejection based on the doctor's report and Lincoln's policies was improper. Instead, they claim that the policy accepted by Lincoln had no condition with respect to Desiree's health or a medical report.

**3.** Under § 155 of the Illinois Insurance Code, where the insurance company's refusal to pay is unreasonable and vexatious,

> the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
(b) $25,000;
(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

Ill.Rev.Stat. ch. 73, para. 767(1) (1986).

Here, the jury determined that the plaintiffs were entitled to $12,112.00, the value of the life insurance policy. Neither party has indicated in their appellate briefs that Lincoln made any settlement offers. Thus, the penalty of $3,028.00, 25% of the judgment entered, was the maximum penalty allowable.

sues involving state substantive law.[4] The state standard is applied for reviewing the lower court's denial of a motion for JNOV. *Kessinger v. GREFCO, Inc.*, 875 F.2d 153, 156 (7th Cir.1989). Under Illinois law, JNOV may be granted "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Daniels v. Standard Oil Realty Corp.*, 145 Ill.App.3d 363, 99 Ill.Dec. 284, 287, 495 N.E.2d 1019, 1022 (1986) (citing *Pedrick v. Peoria and E. R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967)). The district court's determination that Lincoln received a fair trial despite allegedly prejudicial comments by the plaintiffs' counsel "is a matter of federal procedure not governed by state law or practice." *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 288 (7th Cir.1982). The trial court's denial of a motion for a new trial is reversed only if there has been "a clear abuse of discretion." *Spanish Action Comm. v. Chicago*, 766 F.2d 315, 321 (7th Cir.1985). *See also Forrester v. White*, 846 F.2d 29, 31 (7th Cir.1988).

The district court's decision to admit certain evidence is a matter of federal law. *In re Air Crash Disaster Near Chicago, Ill.*, 701 F.2d 1189, 1193 (7th Cir.), *cert. denied, Haider v. McDonnell Douglas Corp.*, 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). It is also reviewed under the abuse of discretion standard. *McCluney v. Joseph Schlitz Brewing Co.*, 728 F.2d 924, 929 (7th Cir.1984). Finally, whether or not the jury was properly instructed is based on state law. *Cook v. Hoppin*, 783 F.2d 684, 693 (7th Cir.1986). We must decide "whether the instructions as a whole were sufficiently clear so as not to mislead the jury and to fairly and correctly state the law." *Kane v. Northwest Special Recreation Ass'n*, 155 Ill.App.3d 624, 108 Ill.Dec. 96, 100, 508 N.E.2d 257, 261 (1987).

## ANALYSIS

### A. Review of District Court's Denial of Motion For JNOV

#### 1. Breach of Contract

Lincoln claims that this case is governed by *Wallace v. Prudential Insurance Company of America*, 12 Ill.App.3d 623, 299 N.E.2d 344 (1973). In *Wallace*, the plaintiff executed a family life insurance application, which included a policy on the life of his son, and simultaneously paid the first month's premium. The policy application, however, stated that it was conditional on the insurance company's acceptance. After examining the plaintiff's application, the insurance company requested further information. The information provided revealed that the plaintiff had suffered a gunshot wound and suggested that he might have had an alcohol problem. A medical exam was requested. Before the exam took place, the plaintiff's son was killed in a car accident. An examination of the plaintiff revealed alcohol abuse. Thereafter, the application was denied and the premium was returned. *Id.* 299 N.E.2d at 345–46.

The plaintiff testified that the insurance agent told him that if he paid the first month's premium on time, which he did, that the application would be effective immediately. The plaintiff did not recall if he had received a "conditional" receipt but thought that he might have. He stated that the insurance agent told him that an exam might be required. *Id.* at 346.

The defendant's agent testified that he told the plaintiff that the application would relate back to the date of payment, if the application itself were accepted, and that he told the plaintiff that a medical exam might be necessary. He also testified that he did not tell the plaintiff that he was insured as of the date the application was signed and the premium paid. Finally, the agent testified that the death of the plaintiff's son did not affect the defendant's decision to deny the application. *Ibid.*

4. Actually, there is no discussion by either party concerning our standard of review on appeal or the substantive state law which applies where appropriate.

The *Wallace* court noted that the insurance application "is a mere offer; it creates no rights and imposes no duty upon the insurer." *Id.* at 347. The application there clearly stated that it was conditional upon approval. Thus, whether or not the plaintiff received a conditional receipt, he signed an application stating that the application had to be approved and, in fact, the application was rejected. *Ibid.*

Moreover, there was no showing that the insurance agent waived the condition of approval and that he had authority to waive it. In fact, the application itself stated that no agent had such authority. *Id.* at 348 (citing *Sommerio v. Prudential Ins. Co. of Am.*, 289 Ill.App. 520, 7 N.E.2d 631, 635 (1937)). Furthermore, both the agent and plaintiff testified that the agent had told the plaintiff that a medical exam might be required.

The *Wallace* court distinguished its facts from those in *Colontuono v. State Farm Insurance Company*, 8 Ill.App.3d 84, 289 N.E.2d 235 (1972), a case on which the plaintiffs here and the district court below relied. In *Colontuono*, the insurance company had a practice of having agents tell applicants that their applications would be unconditionally effective upon the date of their first premium payment, even though the company's written rules did not confer such authority on agents. In addition, the insurance company's agent told the applicant that the policy he wanted on the life of his brother (and business partner) would be effective immediately. The plaintiff asked the insurance agent if a physical exam was required and the agent said no. *Id.* at 236.

Despite these oral assurances, the agent gave the plaintiff a "Conditional Binding Receipt" which stated that a physical exam would be required, temporary insurance was not immediately in effect and the application had to be approved. The insured died six days after the application was signed and the premium was paid. Thereafter, the application was denied. *Ibid.*

The appellate court held that notwithstanding the defendant insurance company's rules stating that agents had no authority to bind the company without its

approval and the fact that the plaintiff was given a "Conditional Binding Receipt" which also stated that a physical exam was required, there was sufficient evidence of oral assurances to establish that these provisions were waived. As part of the insurance agents' training, the defendant company "encouraged [agents] to make representations" that applicants would be covered immediately. *Id.* at 237. Whether or not the insurance agent waived the written conditions of the contract and company rules in that case was a question for the jury to decide. Accordingly, the directed verdict entered in favor of the defendant was reversed. *Id.* at 236–37.

In our case, there was evidence presented that insurance agents told Mr. Rosenburg and other city employees that the insurance was guaranteed without regard to medical history, physical exams or employee participation and that the application would be effective as soon as it was signed and the premium was paid. Nor was any "Conditional Receipt" given to Rosenburg. In addition, Mr. John's presumed supervisor was apparently present during the signing of these applications. Thus, evidence established that John had at least apparent authority, if not express authority, to waive the conditions of the contract. *See Mateyka v. Schroeder*, 152 Ill.App.3d 854, 105 Ill.Dec. 771, 777, 504 N.E.2d 1289, 1295 (1987).

The waiver issue was a question of fact for the jury to decide. *See Anderson v. Creighton*, 26 Ill.App.3d 375, 325 N.E.2d 85, 88 (1975) ("It is a question of fact for the jury whether there was a waiver of the contract provisions which would bar life insurance coverage by the assurances of the sales agents") (citing *Colontuono*). The district court here instructed the jury that the plaintiffs had to prove that they made an offer to purchase insurance on Desiree's life and "[t]hat the defendant by its agent accepted the offer and waived any requirement as to medical condition or percentage of participation." The jury concluded that the plaintiffs met their burden.

Based on all the evidence including the testimony of Rosenburg, Ailene Shaw, Con-

nich Koch and Joe Miklovic, there was sufficient evidence for the jury to conclude that there was a pattern by the defendant's agents to waive such conditions and that this waiver was encouraged. The fact that Rosenburg signed applications which had answers to questions for those not applying for guaranteed insurance does not negate a waiver. In fact, defendant's agent John, not Rosenburg, filled out the application. We conclude that all of the evidence, viewed in a light most favorable to the plaintiffs, does not "so overwhelmingly favor[ ]" Lincoln "that no contrary verdict based on that evidence could ever stand." *Pedrick*, 229 N.E.2d at 513–14. Instead, this was a classic case for the jury to resolve factual and credibility disputes. Its resolution will not be disturbed.

### 2. Unreasonable And Vexatious Conduct

██ A finding of vexatious or unreasonable delay must be based on "the totality of the circumstances," and a court's finding that conduct was unreasonable or vexatious "will not be disturbed unless an abuse of discretion is demonstrated on the record." *Fassola v. Montgomery Ward Ins. Co.*, 104 Ill.App.3d 825, 60 Ill.Dec. 581, 586, 433 N.E.2d 378, 383 (1982). *See also Deverman v. Country Mut. Ins. Co.*, 56 Ill.App.3d 122, 371 N.E.2d 1147 (1977). The fact that Lincoln did not settle the case without a trial and lost at trial does not render its conduct unreasonable or vexatious, so long as "there is a *bona fide* dispute about coverage...." *Mohr v. Dix Mut. County Fire Ins. Co.*, 143 Ill.App.3d 989, 97 Ill.Dec. 831, 838, 493 N.E.2d 638, 645 (1986) (emphasis in original). However, it is proper to "consider that the insured was forced to file suit to recover ... and that the insured was deprived the use of his property." *Ibid. See also National Tea Co. v. Commerce and Indus. Ins. Co.*, 119 Ill.App.3d 195, 74 Ill.Dec. 704, 714–15, 456 N.E.2d 206, 216–17 (1983).

██ Lincoln contends that it did not engage in unreasonable and vexatious conduct in denying the Rosenburgs' claim for insurance benefits and in defending against this suit. According to Lincoln, there was an actual good faith dispute as to whether or not an insurance contract was binding and it is entitled to judgment as a matter of law on this issue. However, assuming that an award of fees and costs was proper, Lincoln does not argue that the amount awarded was unreasonable.

The district court instructed the jury that Lincoln's conduct was vexatious and unreasonable if it "refus[ed] to settle or delay[ed] ... [a] settlement ... even though there [were] no reasonable questions open as to the facts or law of the case." Lincoln does not challenge this instruction and the jury answered a special verdict finding Lincoln's conduct to be unreasonable and vexatious.

The jury's conclusion that Lincoln engaged in unreasonable and vexatious conduct is supported by substantial evidence, and the district court's award of fees and costs was not an abuse of discretion. There was evidence that Lincoln was well aware of its alleged misrepresentations to Granite City employees and to employees in other cities and allowed such conduct to continue. The testimony of Ailene Shaw, an administrative assistant for Lincoln during the fall of 1985, supports this fact. She testified that she informed Kevin Kielty, then a Granite City employee, that Granite City may have been among those cities where Lincoln agents misrepresented the coverage for dependents. Moreover, she was subsequently reprimanded by Kevin Wedmore for telling Kielty that there had been previous misrepresentations. June 15, 1988 Trial Transcript, Vol. II at 163–69.

Lincoln's primary reliance on *Wallace v. Prudential Insurance Company of America*, 12 Ill.App.3d 623, 299 N.E.2d 344 (1973), does not establish that there was a good faith dispute which might otherwise preclude a finding of unreasonable and vexatious conduct. Consistent with *Wallace*, an insurer can be held liable under a conditional insurance contract if there is sufficient evidence that the conditions were waived. The jury found and we agree that there was sufficient evidence presented in this case that the conditions on the Rosenburgs' contracts were waived. In fact, the

same so-called "misrepresentations" had occurred in several other instances, including during presentations to other Granite City employees. Thus, although there was a credibility dispute as to the testimony of various witnesses which was for the jury to resolve, that does not necessarily establish a good faith defense, and we accept the jury's conclusion that it was not. Given the fact that Lincoln was well aware of its previous misrepresentations, the jury could find that it was unreasonable for Lincoln to deny coverage and reject the plaintiffs' claim for insurance benefits. Lincoln's motion for JNOV with respect to the finding that it engaged in unreasonable and vexatious conduct was properly denied.

### B. Is Lincoln Entitled To A New Trial?

Lincoln contends that evidence was improperly admitted and that the plaintiffs' counsel's opening and closing statements included inflammatory and prejudicial remarks. Lincoln argues that it should have been granted a new trial, at least as to the plaintiffs' allegations of unreasonable and vexatious conduct.

Lincoln raises a general objection to the testimony of statements made to others outside of Mr. Rosenburg's presence regarding Lincoln's program in Granite City and other cities in Indiana. Lincoln claims that these statements were irrelevant, prejudicial and inadmissible under Fed.R.Evid. 404(b) as evidence of other wrongs or bad acts. Lincoln specifically objected to Joe Miklovic's testimony which included statements made to Miklovic by Dick Portell, another city employee. Over the defendant's objection, Miklovic also testified for the plaintiffs that he stated to Wedmore that if an applicant died before the 40% "misrepresentation" was clarified, Lincoln would have "one hell of a liability." Lincoln further objected to the plaintiffs' counsel's reference in his opening statement to twenty-nine people who would verify Mr.

Rosenburg's story but would not testify. According to Lincoln, although several objections were sustained by the court, the jury was not able to disregard the cumulative prejudice.

The plaintiffs contend that the evidence objected to was admissible under Fed.R. Evid. 406 to show habit: Lincoln agents had a habit of selling conditional insurance, waiving such conditions and later asserting them as defenses. The plaintiffs claim that they believed in good faith that the testimony of the twenty-nine people would be admissible. The plaintiffs' attorney had given Lincoln copies of these persons' statements prior to trial (during Mr. Rosenburg's deposition) and Wedmore testified at trial that he had received such statements. The plaintiffs argue that any prejudicial effect from these references or from Miklovic's testimony was overcome by the judge's prompt instructions to the jury to disregard the references. In addition, the plaintiffs note that the objection to Miklovic's testimony regarding conversations with Dick Portell was immediately sustained and, in any event, the testimony heard was partially favorable to Lincoln.

Under both *Wallace* and *Colontuono*, evidence of Lincoln's previous waivers was relevant. An insurance company may be held to have waived its written policy conditions if agents were trained to or tended to, with the management's knowledge, give oral assurances that insurance coverage was effective immediately despite written conditions to the contrary. There was sufficient evidence of such a routine practice by Lincoln agents such that the testimony in question was properly admissible under Fed.R.Evid. 406 to establish that Lincoln acted in conformity with its routine business practice in this instance.[5] *See G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1533 (11th Cir.1985). That evidence came from the testimony of Kevin Kielty, Joe Miklovic, Connie Koch, Ailene Shaw and David Rosenburg.

---

**5.** Rule 406 provides as follows:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

In addition, we have no reason to believe that the district court's instructions to the jury that it disregard certain testimony were not followed. Moreover, the testimony in question was, at least in part, favorable to Lincoln. Finally, while other alleged misrepresentations do not establish that Rosenburg himself was defrauded, the fraud count was dismissed. After carefully reviewing the record as a whole, we conclude that the district court did not abuse its discretion in overruling Lincoln's objection to the admission of evidence.

 It is clear that the closing statement of plaintiffs' counsel was intended to invoke the passions of the jury but we do not believe that it led to an unfair trial.[6] Instead, it is a good argument for the practice of bifurcating trials. The comments regarding damages would not have been allowed during the liability phase of a bifurcated trial. We conclude that the district court's rulings on the defendant's objections to the plaintiffs' closing argument did not constitute an abuse of discretion. Lincoln was not denied a fair trial and the district court's denial of Lincoln's motion

for a new trial was not an abuse of discretion.

### C. Jury Instructions

 Lincoln's tendered jury instructions 3 and 4 were rejected by the district court. Proposed instruction 3 stated the following:

> When an agreement is reduced to writing it is presumed that the parties introduced into the agreement every material item and term.

Since the question in this case was whether or not the contract's provisions were waived, instruction 3 is irrelevant and could have misled the jury. Moreover, the "agreement" was already printed up by Lincoln. It was not the result of a negotiation which was later "reduced to writing." The instruction was rightly rejected.

 Proposed instruction 4 stated the following:

> An application for the purchase of life insurance is a mere offer. It creates no rights and imposes no duties upon the

---

**6.** The closing argument which Lincoln claims was prejudicial included the following:

Mr. Bosslet (plaintiffs' counsel): And why is it that this corporation which has its world headquarters listed in Indiana is willing to honor the misrepresentations in these Indiana cities, but decides the folks in Southern Illinois can stew? Well that's just wrong. Dave was misrepresented, just like these people were misrepresented, and they are willing to come in—

Mr. Roth (defendant's counsel): Objection.

Court: Objection overruled.

Mr. Bosslet: They are willing to come in and pay these people as long as they don't load up, according to the president of the company, and Dave Rosenburg wasn't loading up, wasn't trying to take advantage of anything. He was paying premiums for a daughter who he knew had a health problem and he wanted to have that cushion, and the rug was pulled out from under him, and that's wrong. That's wrong. Well, the refusal is wrong and the refusal to pay is wrongful and vexatious.

. . . . .

They came down here with two lawyers for two days, put all these people up, fly them down here, all over $12,112 because they knew, ladies and gentlemen, that this vexatious refusal is a very significant issue in this case.

All you have to do is check a—yes, there is a box that says, we the jury find the defendant's refusal to pay was and is vexatious and unreason-

able. You check that yes, the foreman signs the verdict form, the rest of you sign the verdict form, and the Court determines what costs are assessed against this company in order that a message can be sent that you cannot treat people like this.

A corporation can only act through its agents and employees. You cannot spank a corporation. All you can really do is say you have to pay. As far as they are concerned, what's the 12,000 bucks? They will take the gamble on that. Well, they have got to pay more, and the only way they pay more is if you tell this Court that that refusal is unreasonable and vexatious.

Mr. Roth: Objection.

Court: Objection overruled.

Mr. Bosslet: These people have attorney fees, these people have costs. I couldn't allow Paul John to be examined without my opportunity to cross him. I couldn't allow Barbara Williams who is in a different city, in Cincinnati, to be examined without cross-examining her, somebody has got to cover that deposition and got to pay the Court Reporter. Those are all costs that this company decided it would undertake to freeze these people out and, by golly, I hope it does not work, and it shouldn't work. They have got every right to recover in this case, and you have an obligation to tell this Court that what that company did was wrong so that they can fully recover.

insurer until the insurer issues an insurance policy on the proposed insured. A statement by the selling agent that the policy would take effect immediately upon signing the application is insufficient to show an acceptance of the offer prior to issuance of a policy.

This instruction is not an accurate statement of the law and disregards the principle of waiver applicable to insurance applications. Thus, it too was properly rejected.

The plaintiffs argue that Lincoln failed to object to the district court's refusal to tender instructions 3 and 4 and thus waived any issue as to this on appeal. Regardless of the defendant's possible waiver on appeal, the instructions were properly refused. In addition, the instructions given were clear and complete.

### D. Plaintiffs' Motion For Fees and Costs

Following oral argument, the plaintiffs moved for an award of costs and attorneys fees for their defense against Lincoln's appeal. Without citing any cases in support of their motion, the plaintiffs claim that an award is appropriate under ILL.REV.STAT. ch. 73, para. 767(1) (1986), and 28 U.S.C. §§ 1920, 1924. In response, Lincoln cited no cases and no statutory provisions and stated only that if its conduct in denying the plaintiffs' claim was not unreasonable or vexatious, the plaintiffs should not be awarded costs and fees for the appeal.

■ Under Fed.R.App.P. 39, costs for an appeal are generally awarded to an appellee if the judgment is affirmed. Lincoln has advanced no grounds for us not to impose costs and we believe that an award of costs under Rule 39 is appropriate in this case. In fact, costs would have been imposed without the plaintiffs' motion. Counsel for the plaintiffs shall submit to the clerk an itemized and verified bill of costs within fourteen days after the entry of judgment and objections may be filed within ten days thereafter. *See* Rule 39(d).

Under Fed.R.App.P. 38, damages, including reasonable attorney's fees, may be awarded to the appellee if an appeal is frivolous. *See Bailey v. Bicknell Miner-*

*als, Inc.,* 819 F.2d 690, 693 (7th Cir.1987) (the imposition of sanctions under Rule 38 is based on an objective standard of conduct); *Autorama Corp. v. Stewart,* 802 F.2d 1284, 1288 (10th Cir.1986) ("An appeal is termed frivolous if the result is obvious, or the arguments of error are wholly without merit"). *See also Glick v. Gutbrod,* 782 F.2d 754, 757 & n. 3 (7th Cir.1986) (the court awarded sanctions for a frivolous appeal under Rule 38 and noted that it would have been appropriate for the district court to impose sanctions under Fed.R.Civ.P. 11).

Neither party has discussed the question of whether or not an award for fees and costs on appeal should be based on the state or federal standard, although the plaintiffs have indicated that they believe costs and fees are appropriate pursuant to both. In *Meier v. Aetna Life & Casualty Standard Fire Insurance Company,* 149 Ill.App.3d 932, 103 Ill.Dec. 25, 500 N.E.2d 1096 (1986), a trial court's award of fees and penalties pursuant to ILL.REV.STAT. ch. 73, para. 767(1) (1986) was upheld and the appellate court imposed costs and fees for the appeal. The court held that:

> [t]o interpret section 155 [of the Illinois Insurance Code] to apply only to the trial court proceedings would be to allow an insurer whose financial resources are grossly disproportionate to those of the insured to escape the statute's protections by appealing and punish the insured by whittling away at his judgment with further litigation. Such a result cannot be countenanced under the policy section 155 is designed to further.

*Id.* at 1103. *Meier* was a case brought in state court. We have found no federal cases based on diversity jurisdiction in which an award of fees was made to an insured for a frivolous appeal by the insurer following a trial during which the insurer's conduct was deemed to be unreasonable and vexatious under section 155 of the Illinois Insurance Code.

In *Offshore Logistics v. Arkwright–Boston Manufacturers Mutual Insurance Company,* 639 F.2d 1142, 1146 (5th Cir. 1981) (reh'g en banc), the Fifth Circuit upheld the lower court's award of fees

against an insurer pursuant to Louisiana's statutory penalty based on a finding that the insurer's "refusal to honor its policy was unreasonable, arbitrary and capricious." *Id.* at 1145. In addition, the court imposed fees for the appeal. In so doing, the court concluded that "[s]ince we hold that imposition of the statutory penalty and attorney's fees is appropriate, it is also appropriate to award attorney's fees to [appellee] for its attorney's work in this appeal." *Id.* at 1146. Jurisdiction in *Offshore Logistics* was based on diversity and the court awarded fees for the appeal pursuant to state law, rather than Fed.R. App.P. 38, which was in force at that time. *See, e.g., Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 543 F.2d 1106 (5th Cir.1976), *cert. denied*, 431 U.S. 938, 97 S.Ct. 2651, 53 L.Ed.2d 256 (1977).

■ We have based our decisions whether or not to award attorney's fees for an appeal in diversity cases under Fed.R. App.P. 38. *See, e.g., Turnock v. Cope*, 816 F.2d 332 (7th Cir.1987) and *Reis v. Morrison*, 807 F.2d 112 (7th Cir.1986). *See also Guevara v. Dorsey Laboratories, Div. of Sandoz, Inc.*, 845 F.2d 364 (1st Cir.1988). The plaintiffs here have not suggested any reason why a state standard should apply to the award of attorney's fees and/or costs for an appeal in federal court. However, we find the court's decision in *Meier* to be persuasive authority for the proposition that an award of fees for an appeal by an insurance company which has already been sanctioned for unreasonable and vexatious conduct is consistent with § 155 of the Illinois Insurance Code, and we look to the purpose of the Illinois statute to help determine whether an award in this case is appropriate.

The distinction that must be made, however, is that while an insurance company can engage in unreasonable and vexatious conduct in denying or refusing to settle a claim, it still enjoys the right to bring an appeal and may be able to bring a good faith appeal. Indeed, there could be several good faith grounds to appeal a district court's judgment or rulings during trial which would be unrelated to the insurer's

previous unreasonable and vexatious conduct.

In any event, we conclude that Lincoln's appeal in this case is both frivolous as defined by federal law, *see Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 184 (7th Cir.1985), and unreasonable and vexatious as defined under Illinois law. *Mohr*, 97 Ill.Dec. at 838, 493 N.E.2d at 645. In addition to finding Lincoln's appeal frivolous, we conclude that this is a case where fees should be awarded under Rule 38. *See Spiegel v. Continental Ill. Nat'l Bank*, 790 F.2d 638, 650 (7th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

Lincoln's arguments on appeal are essentially that the result in *Wallace v. Prudential Insurance Company of America*, 12 Ill.App.3d 623, 299 N.E.2d 344 (1973) should control this case as a "matter of law" and that the district court's rulings denied Lincoln a fair trial. As previously discussed, the court's decision in *Wallace* turned on the substantially different facts of that case, which the court distinguished from the more similar facts in *Colontuono v. State Farm Insurance Company*, 8 Ill. App.3d 84, 289 N.E.2d 235 (1972) and the facts here. Moreover, the *Wallace* court recognized that an insurance company's written policy conditions can be waived, as they may have been in *Colontuono* and were here. Obviously, waiver is a question of fact for (in this case) the jury to decide. Since the testimony at trial resulted in a credibility dispute, i.e., there were contradictory claims that Lincoln's agents did or did not waive the conditions, the resolution of the credibility dispute was for the jury to make and one which was supported by the evidence. Lincoln's statement that it "is entitled to judgment as a matter of law" ignores that this case turned on questions of fact and that the jury's verdict is consistent with both *Wallace* and *Colontuono*.

In addition, although we are well aware of the standards of review on appeal, Lincoln failed to recite any of the several standards which might apply in this case and, accordingly, ignored its heavy burden

on appeal. Had Lincoln bothered to square its arguments with our standard of review it might have realized that an appeal in this particular case was frivolous and the result a foregone conclusion.

Similarly, Lincoln's appeal on the issue of vexatious and unreasonable conduct is wholly without merit. The jury's finding and the district court's entry of judgment and imposition of costs, fees and a penalty was well supported by the evidence. Moreover, the question of whether or not Lincoln's conduct was unreasonable and vexatious is also a question of fact. Lincoln's statement that it is entitled to judgment as a matter of law, without discussing its burden on appeal, is also frivolous.

We also find Lincoln's arguments with respect to the district court's evidentiary rulings and denial of its motion for a new trial to be frivolous. They represent nothing more than an attempt to raise more issues on appeal, none of which have any merit. Finally, as discussed previously, Lincoln's argument on appeal with respect to its tendered jury instructions is obviously without merit given the facts of this case.

■ Sanctions are appropriate for a frivolous appeal if "the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy." *Reid v. United States,* 715 F.2d 1148, 1155 (7th Cir.1983). "The purpose of [Rule 38] is twofold. First, it operates to compensate winners of judgments in the district court for the expense and delay of defending against meritless arguments in the court of appeals. Second, it seeks to deter such appeals and thus to preserve the appellate court calendar for cases worthy of consideration." *Ruderer v. Fines,* 614 F.2d 1128, 1132 (7th Cir.1980).

Even if, giving Lincoln the benefit of substantial doubt, its appeal were not frivolous, the Rosenburgs are entitled to attorney's fees under section 155 of the Illinois Insurance Code, ILL.REV.STAT. ch. 73, para. 767(1) (1986). That section provides that a party prevailing against an insurer is entitled to "reasonable attorney fees" in cases where the insurer's conduct is "vexatious and without reasonable cause." Not only did the Rosenburgs prevail here, but, as previously indicated, the jury found Lincoln's conduct vexatious and unreasonable.

■ Section 155 covers both trials and appeals. *Meier v. Aetna Life & Casualty Co.,* 149 Ill.App.3d 932, 103 Ill.Dec. 25, 500 N.E.2d 1096 (1986). This is identical to the rule used by federal courts in § 1988 cases. E.g., *Ustrak v. Fairman,* 851 F.2d 983 (7th Cir.1988). Awarding fees for both trial and appeal is also the rule, in this circuit at least, for fees awarded under Fed.R.Civ.P. 11. *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 939 (7th Cir.1989) (en banc). The objective, of course, is to ensure that the prevailing party recovers full costs.

Accordingly, if section 155 is deemed to create a substantive entitlement for the prevailing party once the jury finds, as it did here, that the insurer's refusal to pay was vexatious and unreasonable, as we have concluded, then it is not a problem for a federal court to award appellate attorney's fees under state law in situations like this one, where the appeal is equally unreasonable and vexatious, if not frivolous.

### CONCLUSION

The appellant's grounds for reversal are without merit and the judgment below is affirmed. Costs are to be awarded under Fed.R.App.P. 39(d). Attorney's fees will be awarded under Fed.R.App.P. 38 and section 155 of the Illinois Insurance Code, ILL.REV. STAT. ch. 73, para. 767(1) (1986). The plaintiffs are to submit within fourteen days a comprehensive statement of reasonable legal fees incurred in defending this appeal. Counsel for the defendants will have ten days thereafter to submit any objections to the fees claimed.

AFFIRMED.