**INSURANCE CORPORATION OF IRE-LAND, LTD., Plaintiff–Appellant,**

v.

**BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY and Richard Moy, M.D., Defendants–Appellees.**

No. 90–2371.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1991.

Decided July 15, 1991.

Robert M. Chemers, Pretzel & Stouffer, Jerry L. McDowell, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, Ill., and Michael L. Cohen, J. Marks Moore, III, and James W. Bartlett, Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, Md., for plaintiff-appellant.

Shari R. Rhode, Southern Illinois University, Carbondale, Ill., Theodore LeBlang, M. Douglas Henderson, Richard G. Higgerson, Springfield, Ill., and Michele Odorizzi, and William B. Hoff, Jr., Mayer, Brown & Platt, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge and COFFEY and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

In this appeal, we are asked to review the district court's interpretation of a general liability insurance policy issued by Appellant Insurance Corporation of Ireland ("ICI") to Southern Illinois University ("SIU"). The issue is whether the policy covered legal expenses incurred by SIU in defending an antitrust lawsuit filed by Humana of Illinois, Inc. ("Humana"). Humana's suit named as defendants SIU and one of its officers, Richard Moy, M.D., the Dean of SIU Medical School. ICI brought an action in federal district court seeking a judgment declaring that its policy did not provide coverage for the costs of defending Dean Moy and SIU against Humana's claims. The district court disagreed, and entered judgment in favor of Dean Moy and SIU. ICI appeals, and we affirm.

## I.

Our story begins back in 1980, when SIU sent out to various insurance brokers a "Request for Quotation." This document invited bids for SIU's comprehensive general liability insurance and gave specifications for the coverage required by SIU. One of the specifications was that the policy must cover "all students and employees while acting within the scope of their duties." Defendants' Trial Exhibit ("DX") 1. This makes perfect sense, of course; a university does not "act" in a way that might create liability but through its employees, and thus any liability insurance coverage for SIU's activities necessarily would cover the activities of SIU's employees, provided they were acting within the scope of their employment. At any rate, various bids were submitted in response to the Request. SIU ultimately chose a policy underwritten by Bercanus Insurance Company and Beacon Insurance Company (the "Bercanus/Beacon policy"). A Chicago insurance broker, Marsh & McLennan ("M & M"), submitted the successful bid on behalf of Bercanus and Beacon. The Bercanus/Beacon policy incorporated by reference the coverage specification concerning employees, and it took effect June 1, 1980. The policy was to run for three years.

Before the Bercanus/Beacon policy expired, however, M & M came to SIU with an idea. M & M had developed an insurance program that was especially designed for universities and that would combine property and liability coverage. The combined policies issued under this program

were underwritten by London-based insurance companies, including ICI. M & M suggested that SIU replace the Bercanus/Beacon policy with one of these combined policies underwritten by ICI. M & M represented that such a switch would save SIU about $50,000 per year. SIU was quite interested, but wrote to M & M that the new policy must provide the same coverage as specified in the Request for Quotations. *See* DX 5. M & M assured SIU that the coverage would be the same. (Earlier, M & M had forwarded to ICI the details of SIU's coverage under the Bercanus/Beacon policy, as well as SIU's bid specification referring to the coverage of employees.[1] Having seen all that, ICI had authorized a policy for SIU.)

SIU decided to heed M & M's advice and agreed to the switch. SIU signed on with ICI for a three-year, combined property and comprehensive general liability policy, with coverage beginning on July 1, 1981. The liability portion of the ICI policy provided coverage for the "Assured" for all damages it became legally obligated to pay "because of Personal Injury, Property Damage or Wrongful Act," and covered as well the costs of defending against "any claim or suit against the Assured seeking damages on account of personal injury or property damage even if any of the allegations of the claims or suit are groundless, false or fraudulent." Appellant's Appendix ("AA") at 35. "Personal Injury" was defined quite broadly by the policy to include several business-related torts, such as "Infringement of Copyright, Title or Slogan," and "Unfair Competition." *Id.* at 37. Excluded from coverage was "personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Assured." *Id.* at 36. The policy defined "Assured" as including the "Named Assured" (essentially SIU's Board of Trustees) and:

> Any person or organization to such extent and for such limits of liability as the named Assured has agreed before loss to provide insurance for, provided [ICI] shall not be liable for any amount agreed to by the named Assured which is in excess of the limits of liability afforded by this policy.

*Id.* These coverages and definitions were basically the same as contained in the Bercanus/Beacon policy.

Two years later, changes were made to the wording of the ICI policy, including the substitution at various points of the American term "insured" for British term "assured." The "Declarations" section of the newly-worded policy listed the risks covered by the policy, including "Hospital Professional and/or Malpractice Liability," "School Board Liability," and "Professional Liability for Attorneys and/or Students associated with the Law School." AA at 61. In general, no substantive changes were made in 1983, at least none that are relevant for our purposes here.

The 1981 ICI policy was due to expire July 1, 1984. Prior to that expiration date, SIU sent out another "Request for Quotation" containing specifications for the insurance SIU needed. This Request, like the 1980 Request, specified that liability coverage would be provided for all SIU employees. M & M passed these materials along to ICI and ultimately submitted on ICI's behalf the winning bid. ICI issued a renewal policy for SIU, which took effect July 1, 1984, and was to run for three years. This time, ICI issued the policy from its new Chicago offices rather than from London. The 1984 ICI policy added the pledge that ICI "shall allow the Insured to control the selection of the adjusting firm to be utilized on claims and also the selection of defense attorneys." AA at 116. Otherwise, the 1984 policy was, in all

---

[1] There was some dispute in the evidence at trial as to whether the appropriate officers of ICI actually reviewed SIU's bid specifications. The district court, based on substantial documentary and testimonial evidence, concluded that ICI officers were made aware of SIU's specification requiring the coverage of all employees. As we find no "clear error" in that factual determination, we accept it as true. *See Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692, 696 (7th Cir.1991) (citing Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)).

respects here relevant, identical to the 1981 policy (as amended).

The second chapter in our story begins with Humana's suit against SIU and Dean Moy. Humana filed the suit in August, 1984—at the very start of the term of the 1984 ICI policy. Humana complained of SIU's refusal to allow physicians on its full-time faculty to practice at Humana's hospital in Springfield. Humana claimed that that practice violated federal and Illinois antitrust laws and constituted unfair competition and tortious interference under Illinois common law. Humana sought injunctive relief against SIU and injunctive relief and monetary damages against Dean Moy.[2] SIU immediately notified ICI of the suit and chose (as was its right under the 1984 policy) the attorneys it wished to handle the defense to Humana's claims: the Chicago law firm of Seyfarth, Shaw, Fairweather & Geraldson. Two months later, ICI's claims manager in Chicago sent Seyfarth, Shaw a letter "confirming" its retention as defense counsel for SIU and Dean Moy. DX 20, AA at 206. (Seyfarth, Shaw represented SIU in a previous antitrust action, and ICI paid Seyfarth, Shaw's fees for that defense under an earlier policy—apparently without dispute.)

Seyfarth, Shaw went to work on the defense of SIU and Dean Moy. By late 1985, the firm had amassed well over $75,000 in fees, bills for which had been submitted and forwarded to ICI. Payment was not forthcoming, however, and Seyfarth, Shaw was losing patience. Seyfarth, Shaw and SIU were not the only ones who thought ICI should pony up. ICI retained its own law firm in Chicago to investigate whether the ICI policies covered the defense of Humana's claims. That firm reported to ICI in mid–1985 that, subject to two possible loopholes, the policies provided coverage. By late 1985, the firm resolved its doubts in favor of full coverage and recommended to ICI that it pay the outstanding fees. DX 29.

■ The issue came to a head in January 1986, when the increasingly estranged parties met in M & M's Chicago offices. As of that time, Seyfarth, Shaw had incurred about $175,000 in unpaid fees and expenses and threatened to withdraw from the Humana case if the fees were not paid by February 1. By the close of that meeting, ICI's Chicago manager capitulated. He later wrote to his superiors in London that, at that meeting, he and ICI's local attorney were "shot down on all Q's we raised regarding coverage," and that they concluded after the meeting that "we had compromised any chance we had had to deny coverage by: (A) Not sending out reservation of rights letter, [and] (B) Retaining services of Seyfarth firm and then saying nothing regarding possible no coverage situation for period of fifteen months." DX 37.[3]

About two weeks after the January 1986 meeting, ICI paid Seyfarth, Shaw the $175,000. The letter accompanying the payment contained no reservation of rights clause, non-waiver clause, or any other language suggesting that ICI continued to dispute coverage. Rather, ICI seemed to attribute the delay in payment to criss-crossed communications among its home office in Dublin and its London and Chicago offices, and

---

**2.** The structure of Humana's claim for relief makes it clear why Dean Moy was named at all: to avoid the eleventh amendment's bar against a suit for monetary damages against a state entity such as SIU. *See Kroll v. Board of Trustees of the University of Illinois,* 934 F.2d 904 (7th Cir. 1991).

**3.** At trial, ICI claimed that the document here cited, a telex from ICI Chicago to ICI London, was protected by the attorney/client and/or attorney work product privilege. (ICI actually raised this claim regarding a bevy of documents.) The district court disagreed, and ordered the production of the documents. ICI takes issue with that decision on appeal. ICI's

challenge is meritless. As we discuss below, ICI has claimed that it paid the Seyfarth, Shaw fees "under duress." By so claiming, ICI has put into play the issue of its state of mind when it made the Seyfarth, Shaw payments and waived any defense of privilege regarding the telex and the other documents that relate to that issue. *See Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).

Similarly, we reject without further discussion ICI's additional, meritless challenges to the admission of various documents, as well as its superfluous arguments concerning the agency status of insurance brokers.

concluded the letter by stating, "We apologize for any embarassment [sic] caused you by the long delay in payment and we thank you for your patience with us." DX 31, AA at 239.

ICI's cooperativeness was short-lived. In mid–1986, ICI reverted to refusing to pay Seyfarth, Shaw's fees, claiming that there was no coverage under the policies. In August 1986, ICI filed the instant action, requesting a declaratory judgment that Dean Moy was not a covered insured under the policy and that the policy did not cover SIU's defense to Humana's antitrust claims. Federal jurisdiction was based on the diversity provision, 28 U.S.C. § 1332(a)(2) (1976): ICI was incorporated and had its principal place of business in the Republic of Ireland, the defendants were Illinois citizens, and the amount in controversy exceeded $10,000, the applicable amount at the time the suit was filed. Along with denying coverage, ICI sought reimbursement of the $175,000 it already paid to Seyfarth, Shaw on the ground that the payment was made "under duress."

Seyfarth, Shaw's representation of SIU and Dean Moy—and accumulation of unpaid fees—continued in the Humana case. In February 1987, ICI paid Seyfarth, Shaw an additional $100,000 toward its fees, this time executing a "Non–Waiver Agreement" reserving its defenses to coverage. AA at 242. Even with this second payment, Seyfarth, Shaw's fees were not entirely satisfied. Thus, the firm intervened in ICI's declaratory judgment action, claiming the balance of the fees it was owed for its work in the Humana case.

In January 1988, the Humana case was settled. Humana's claims were dismissed, mutual releases were executed, and, according to the record, no damages or other payments were made to Humana by SIU or Dean Moy. But the instant dispute about who should foot the bill for the Humana case remained. Both sides moved for summary judgment, and the court denied the motions. In April 1990, the district court held a bench trial on ICI's claims. On the first day of trial, ICI and Seyfarth, Shaw informed the court that they had settled their dispute regarding the remaining fees and that Seyfarth, Shaw could be dismissed. Thus, the only question remaining was whether SIU must reimburse ICI for the $275,000 it paid to Seyfarth, Shaw because the policy denied coverage for those fees.

After receiving two day's worth of testimony and documentary evidence, the district court answered that question with a resounding "no." Applying Illinois law (which all parties agree applies here), the court found that Dean Moy, as an SIU employee acting within the scope of his employment, was covered by the ICI policy and that ICI waived its right to assert any other defenses to coverage for Humana's claims against SIU. In accordance with these findings, the court entered judgment on May 18, 1990, in favor of SIU and Dean Moy and against ICI.[4] In addition, the court, on its own motion, found that sanctions against ICI and its attorneys were warranted under Fed.R.Civ.P. 11. The court ordered the defendants to submit a statement of the attorney's fees and expenses they incurred in the defense of this case and allowed ICI an opportunity to present "whatever defense [it] may have to the imposition of fees, expenses and sanctions for violation of Rule 11."

ICI filed a timely appeal from the May 18 judgment. In "Supplemental Judgments" dated November 2, 1990, May 16, 1991, and May 31, 1991, the district court awarded to SIU over $340,000 in fees, charged against ICI and its attorney, Michael Cohen. The fees were awarded pursuant to Rule 11 and § 155 of the Illinois Insurance Code, Ill. Rev.Stat.1989, ch. 73, para. 767. ICI has challenged these judgments in a separate appeal, No. 91–2362, which is pending before this court.

## II.

■ ICI's complaint on appeal is that the district court botched two dispositive cover-

---

**4.** About two months later, the court entered an "Amended Judgment" reflecting the fact that the claims of intervenor Seyfarth, Shaw had been "dismissed as compromised and settled."

age determinations: Dean Moy was covered by the policies, and ICI waived any other defense it might have had to coverage for the costs of defending SIU in the Humana suit. In reviewing these determinations, we accept the facts as found by the district court, absent clear error. *See supra* note 1. The interpretation of the insurance policy in light of these facts is a question of law, however, and our review is *de novo. See Sodowski v. National Flood Ins. Program,* 834 F.2d 653, 655 (7th Cir. 1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988). We will look for guidance to Illinois law and principles regarding the interpretation of insurance policies. *See, e.g., A. Kush & Associates v. American States Ins.,* 927 F.2d 929 (7th Cir.1991); *Rosenburg v. Lincoln American Life Ins. Co.,* 883 F.2d 1328 (7th Cir. 1989).

■ Was Dean Moy covered? As with any question of contractual interpretation, the place to begin is the language of the contract—here, the 1981 and 1984 ICI policies. *See Board of Education v. Country Mut. Ins. Co.,* 121 Ill.App.3d 124, 76 Ill. Dec. 636, 637, 459 N.E.2d 273, 274 (1984) ("General rules of contract construction govern the interpretation of insurance policies."). If the language of the policy is clear and unambiguous, it should be given its plain, ordinary meaning, *id.,* but if it is susceptible to more than one construction (i.e., "ambiguous"), it should be construed strictly against ICI and in favor of coverage. *See Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.,* 832 F.2d 1037, 1043 (7th Cir.1987) (discussing "well recognized rules of insurance contract construction" under Illinois law). The goal, of course, is to ascertain and carry out the true intention and understanding of the contracting parties. *Id.*

■ The ICI policies limited coverage to "the Assured" (or "Insured," in later versions), which was defined as the "Named Assured" and any other person "to such

extent and for such limits of liability as the named Assured has agreed before loss to provide insurance." *See supra* at 333. Assuming Dean Moy is not a "Named Assured," [5] the issue becomes whether he is included in the phrase "the named Assured has agreed before loss to provide insurance." What did the parties mean by that phrase? Nowhere in the policy is this phrase amplified, nor is a procedure given by which the "named Assured" is to designate whom it has "agreed before loss" to cover. In fact, the phrase itself invites the examination of evidence extrinsic to the policy. Thus, to determine which SIU officers and employees were intended to be included as "assureds," we must refer to the conduct and understandings of the parties, as well as the circumstances surrounding the formation of the contract. *See Chicago Board Options Exchange v. Connecticut General Life Ins. Co.,* 713 F.2d 254, 257–58 (7th Cir.1983) (applying Illinois law).

■ After receiving two days' worth of documentary and testimonial evidence on these points, the district court concluded that both SIU and ICI understood that the liability policies covered Dean Moy as an SIU officer acting within the scope of his employment. The record evidence supporting that conclusion is abundant. Briefly, here are some of the most persuasive pieces of evidence: in August 1982, SIU's supervisor of insurance sent a letter to M & M that opened by stating, "Our policy states that in addition to all employees being insureds, we have the option of advising of additional insureds." DX 13. (The purpose of the letter was to add some additional, non-employee insureds.) This letter was passed along to ICI, and the following month, ICI's underwriting manager signed his approval on the letter, adding the proviso "OK as per sub limits." Second, the very coverage provided by the policy indicates that it was designed to cover employees acting in the course of their employment: e.g., hospital and mal-

---

5. SIU argued below that employees acting within the scope of employment were in fact included within the "Named Assured," because the custom and practice in the insurance industry is that the use of "Board of Trustees" in a liability policy necessarily includes employees. The district court found it unnecessary to rule on that argument, as do we.

practice liability, and professional liability for law school faculty and students. *See supra* at 333. Third, before issuing the policies, ICI received from SIU at least two "Requests for Quotation," which contained the specification that all employees were covered. Fourth, even if we limit our inquiry, as ICI demands, to the strict terms of the definition of "assureds," there is evidence that SIU "agreed before loss to provide insurance" for Dean Moy: at all times here relevant SIU had a published indemnification policy that covered every "officer, employee and student appointee" of SIU. DX 17. Thus, it is clear to us, as it was to the district court, that Dean Moy was covered by the ICI policies.

■■■ ICI's second coverage challenge fares no better. ICI argues that the policy did not cover the defense of ICI against Humana's specific claims, citing a bevy of coverage defenses. The district court ruled that ICI had waived any coverage defenses by approving Seyfarth, Shaw's defense of SIU, *see* AA at 206, and then paying Seyfarth, Shaw's bills in January 1986 without any sort of reservation of the right to contest coverage. *See* AA at 239. (As to the "Non-waiver Agreement" attached to the second ICI–Seyfarth, Shaw payment in 1987, the district court stated, "A reservation of rights declared over twenty months after the case is well under way comes too late.") We agree. Under Illinois law, an insurance company has three options if it wishes to dispute coverage for the defense of its insured against a third party action: it can immediately seek a declaratory judgment of non-coverage, provide a defense for the insured under a reservation of rights, or completely refuse to do either of the above at the peril of being found in breach of its duty to defend. *Tews Funeral Home*, 832 F.2d at 1042. *See also A. Kush & Associates*, 927 F.2d at 934. Notice that this list does not include the option, "Pay for the defense of the insured with an apology and then contest coverage later," which is what ICI did here. Simply put, if ICI wanted both to pay Seyfarth, Shaw and to retain its right to challenge its duty to make that payment, it had to get a reservation of rights agreement.

It did not do so, and, therefore, it waived any argument concerning lack of coverage under the policies. *See Western Casualty & Sur. Co. v. Brochu*, 105 Ill.2d 486, 86 Ill.Dec. 493, 499, 475 N.E.2d 872, 878 (1985) (discussing waiver in insurance context); *Gibraltar Ins. Co. v. Varkalis*, 46 Ill.2d 481, 263 N.E.2d 823, 826–27 (1970) (insurer waived any defense to coverage by providing insured a defense for 17 months before contesting coverage). Further, ICI's waiver of its defenses to coverage was irrevocable, *see Tri–City Jewish Center v. Blass Riddick Chilcote*, 159 Ill.App.3d 436, 111 Ill.Dec. 247, 250, 512 N.E.2d 363, 366 (1987), so the "Non-waiver Agreement" attached to the second Seyfarth, Shaw payment was ineffectual.

On appeal, ICI claims that waiver should not be found here for two reasons: 1) the lack of coverage cannot be waived, and 2) SIU has failed to show that it was prejudiced by the lateness of ICI's decision to contest coverage. Both arguments are meritless. First, under Illinois law, implied waiver frequently has been evoked to bar an insurer from raising the defense of non-coverage. *See National Discount Shoes, Inc. v. Royal Globe Ins.*, 99 Ill.App.3d 54, 54 Ill.Dec. 263, 266, 424 N.E.2d 1166, 1169 (1981) (listing cases). Second, SIU may not even need to show prejudice, *see Western Casualty*, 86 Ill.Dec. at 499, 475 N.E.2d at 878 ("Prejudicial reliance by the insured is not required [for waiver]."); but, if it does, ICI's confirmation of Seyfarth, Shaw's representation and its failure to raise an objection to Seyfarth, Shaw's defense for over one year would be enough. *Cf. Gibraltar Ins.*, 263 N.E.2d at 826–27 (reservation of rights interposed after 17 months was too late).

ICI is anxious to bypass this waiver analysis so that it can present its coverage defenses. Frankly, we fail to understand ICI's hurry to get to these defenses; even a quick review of a few of them—"no coverage because Humana's claims involved intentional wrongful conduct," and "coverage was excluded under the 'willful violation of a penal statute' provision" (*see supra* at 333)—reveals that they are specious.

*See generally Hartford Accident and Indem. Co. v. Gulf Ins. Co.*, 837 F.2d 767, 769 (7th Cir.1988) (under Illinois insurance law, insurer must defend insured in any action in which any claim is potentially within the risks covered by the policy); *Tews Funeral Home*, 832 F.2d 1037 (affirming district court decision that, pursuant to comprehensive general liability policy, insurer had duty to defend insured against third party lawsuit raising antitrust and common law business tort claims, despite insurer's interposition of defenses much like ICI's). Thus, waiver or no waiver, ICI has no plausible grounds on which to dispute coverage for the cost of defending SIU from Humana's claims.

One issue remains. SIU argues that it is entitled to the attorney's fees it incurred in defending against this appeal, citing Fed.R. App.P. 38 and § 155 of the Illinois Insurance Code. *See Rosenburg*, 883 F.2d at 1338–40. As we mentioned above, the propriety of the district court's imposition of fees under § 155 and Rule 11 is pending before this court in appeal No. 91–2362. We believe it would be prudent to withhold decision on SIU's claim for fees until the panel assigned to hear No. 91–2362 has considered the principal claims under § 155. If that panel holds that fees were properly awarded by the district court under § 155, then it may well be that fees should be awarded as a matter of course for the appeals—both this appeal and No. 91–2362. *See Meier v. Aetna Life & Casualty Co.*, 149 Ill.App.3d 932, 103 Ill.Dec. 25, 31–32, 500 N.E.2d 1096, 1102–03 (1986). (This is a possibility we broached but did not resolve in *Rosenburg*.) If the panel in No. 91–2362 so decides, fees under Rule 38 would be redundant, and we would not need to visit SIU's request for fees. If, however, the panel in No. 91–2362 concludes that ICI's behavior *in denying coverage* was not so unreasonable and vexatious that § 155 authorizes an award for all fees incurred throughout the litigation, it will be necessary to decide whether ICI's conduct in bringing *this appeal* permits an award of fees under Rule 38. That question this panel is best situated to resolve. But, as we may not need to do so, we postpone action until after the panel in No. 91–2362 has reached its decision. No later than ninety days after that happens, SIU should file with this panel a status report concerning the disposition of its request for fees.

III.

ICI issued two liability insurance policies to SIU and collected hefty premiums under the policies. ICI had no problem with this arrangement, until SIU put in for the substantial bills it racked up defending itself and one of its deans. When that happened, ICI denied coverage and filed this declaratory judgment action. The district court decided that ICI should be held to its bargain and pick up the tab. For the reasons discussed above, we find no error in that decision. Thus, the judgment against ICI and in favor of the defendants is

AFFIRMED.