**ESSEX INSURANCE COMPANY,**
**Plaintiff–Appellee,**

v.

**STAGE 2, INCORPORATED, an Illinois corporation, Defendant,**

**and**

**Drew Lucht, Defendant–Appellant.**

No. 92–2870.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1993.

Decided Jan. 20, 1994.

Edward M. Kay (argued), James T. Ferrini, Lisa Marco Kouba, Susan Condon, Imelda Terrazino, Mary C. O'Connor, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, IL, for plaintiff-appellee.

Charles H. Delano, IV, Charles H. Delano, III (argued), Springfield, IL, for defendant-appellant.

Before ESCHBACH, MANION and KANNE, Circuit Judges.

ESCHBACH, Circuit Judge.

In October 1990, Essex Insurance Company filed a declaratory judgment action, pursuant to 28 U.S.C. §§ 2201 and 2202, against Stage 2, Inc. and Drew Lucht under diversity jurisdiction. Essex sought a declaration that it had no duty to defend or indemnify its insured Stage 2 with respect to a lawsuit brought by Lucht against Stage 2. The district court granted summary judgment to Essex and Lucht appealed.[1] We now affirm.

## I.

On January 6, 1989, two patrons of Stage 2, a teenage nightclub in Springfield, Illinois, assaulted Lucht. Lucht sued those individuals and Stage 2 in the Circuit Court of Sangamon County, Illinois, seeking to recover for his injuries. Lucht alleged that Stage 2 breached its duty of care by failing to protect him from assault by other patrons. Stage 2's president and manager, Robert Scheer, subsequently notified Essex, Stage 2's liability carrier, and requested a defense and indemnification. In response to the request, Essex engaged the law firm of Sorling, Northrup, Hanna, Cullen and Cochran, Ltd. ("Sorling") to defend Stage 2 against Lucht's suit. In turn, Stage 2 retained Michael Gifford, its general counsel, to monitor Sorling's defense and give legal advice to Scheer.

The liability insurance contract between Essex and Stage 2 specifically excluded cov-

---

1. Both Lucht and Stage 2 were defendants in the declaratory judgment action. While only Lucht chose to appeal, he also asserts the affirmative defenses raised by Stage 2 at the district court level.

erage of claims "arising out of assault and battery." The first exclusion, contained in a special endorsement to the policy, provided as follows:

**Assault and Battery Exclusion:**

It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the Insured, his employees, patrons or any other person.

The second exclusion, contained in a separate endorsement entitled the "Hiring/Supervision Exclusion", provided as follows:

It is understood and agreed that claims, accusations, or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery are not covered and no duty to defend any insured from such claims, accusations or charges is provided.

When Essex hired Sorling to defend Stage 2, Essex did not issue Stage 2 a reservation of rights letter. Such a letter allows an insurer to undertake the defense of its insured while preserving the insurer's right to deny coverage under the policy. However, in an earlier case involving another patron assaulted on Stage 2's premises who had filed a similar claim against Stage 2, Essex had sent Stage 2 a letter denying coverage of the claim and citing to the specific exclusionary provisions in the policy. Familiar with that earlier case, Gifford wrote a letter to Scheer a few months after Lucht filed his suit, explaining that those same exclusionary provisions would most likely apply to Lucht's suit and thus Stage 2 would not be indemnified under its insurance policy.

Approximately seventeen months after Lucht filed his suit against Stage 2, Essex

sought a declaratory judgment in federal court under diversity jurisdiction.[2] 28 U.S.C. § 1332(a). Essex did so only after making several unsuccessful attempts to settle the case with Lucht. Essex sought a declaration that it had no duty to defend or indemnify Stage 2 against Lucht's suit. However, even after filing for declaratory judgment, Essex continued to pay for Sorling's defense of Stage 2. While the declaratory judgment action was pending, Lucht's suit against Stage 2 proceeded to trial and in July 1991, the jury found all defendants liable and awarded Lucht over $200,000 in damages.

One year later, the district court considered cross-motions for summary judgment in the declaratory judgment action. The court first held that the terms of the insurance contract between Essex and Stage 2 clearly and unambiguously excluded coverage for Stage 2's liability to Lucht. The district court then considered the affirmative defenses of waiver and estoppel asserted by Stage 2 and Lucht. The court determined that, under Illinois law, Essex had neither waived its right to deny coverage under the policy nor was it estopped by its conduct from denying coverage. Accordingly, the court granted Essex's motion for summary judgment.[3] Only Lucht appealed from the decision. All parties agree that Illinois law governs the resolution of this case. We have jurisdiction under 28 U.S.C. § 1291.

## II.

This Court reviews *de novo* the grant of summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

**2.** Essex is a Delaware corporation with its principal place of business in Glen Allen, Virginia. Stage 2 is an Illinois corporation with its principal place of business in Peoria, Illinois and Lucht is a resident of Springfield, Illinois.

**3.** The district court concluded, however, that Essex was estopped from asserting any claim for reimbursement of Stage 2's defense costs. Even though Essex was not originally obligated to de-

fend Stage 2, its decision to do so, with the full knowledge that Lucht's claims were not covered by the insurance contract, barred Essex from seeking to recover those expenses from Stage 2. The district court relied on both the Illinois doctrine of estoppel and this Court's decision in *Insurance Corp. of Ireland Ltd. v. Board of Trustees of S. Ill. Univ.*, 937 F.2d 331 (7th Cir.1991). Essex did not appeal this decision.

Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

■ Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This is significant. For under Illinois law, a party asserting waiver or equitable estoppel must prove these affirmative defenses by clear, precise and unequivocal evidence. *See Moreno v. Joe Perillo Pontiac, Inc.,* 112 Ill.App.3d 670, 68 Ill.Dec. 331, 334, 445 N.E.2d 1184, 1188 (1983) (waiver); and *Western Cas. & Sur. Co. v. Brochu,* 105 Ill.2d 486, 86 Ill.Dec. 493, 500, 475 N.E.2d 872, 879 (1985) (estoppel).

Lucht concedes that the exclusionary language in the Essex insurance policy, standing alone, would preclude coverage for Lucht's judgment against Stage 2. However, Lucht contends that Essex may not enforce the exclusionary provisions of the policy because it took control of Stage 2's defense without making a written or verbal reservation of rights. Lucht argues that when Essex defended Stage 2 against Lucht's suit for seventeen months without issuing Stage 2 a reservation of rights letter, it waived its right to invoke the policy exclusions. Alternatively, Lucht contends that Essex's conduct prejudiced Stage 2 and therefore Essex should be estopped from asserting any coverage defenses.

Essex admits that it retained a law firm to defend Stage 2 during the *Lucht* litigation and that it never sent a reservation of rights letter to Stage 2. However, Essex denies that it waived its right to contest coverage. Essex maintains that it advised Stage 2 all along of its intent to file a declaratory action if the lawsuit did not settle. Moreover, Essex asserts that Stage 2 knew throughout the litigation that its insurance policy would not cover Lucht's claims. Furthermore, Essex argues that Stage 2 suffered no prejudice from its delay in instituting the declaratory judgment action because Lucht refused to settle his lawsuit for an amount Stage 2 could afford, even after learning that Stage 2 might lack insurance coverage. Essex contends that Stage 2's lack of prejudicial reliance negates the equitable basis for applying estoppel and therefore the doctrine cannot apply. We will consider each affirmative defense in turn.

A. Waiver

■ Waiver consists of the voluntary and intentional relinquishment of a known and existing right. It arises from an affirmative act and not by operation of law. Waiver may be either express or implied, arising from acts, words, conduct, or knowledge of the insurer. Waiver is also essentially unilateral, focusing only upon the acts and conduct of the insurer, and requiring no act of the insured to complete it. Prejudicial reliance by the insured is not required. *Brochu,* 86 Ill.Dec. at 499, 475 N.E.2d at 878.

■ Lucht concedes that Essex did not expressly waive its right to deny coverage. However, Lucht asked us to imply waiver from Essex's conduct. We decline. Essex's assumption of Stage 2's defense and its attempts to settle with Lucht do not support a finding of waiver because these actions do not demonstrate an intent to indemnify Stage 2 in spite of the exclusionary clauses. Essex specifically warned both Stage 2 and Lucht that if they did not achieve a settlement, Essex would file for a declaratory judgment on the basis of the policy exclusions. Such warnings are not consistent with "the intentional relinquishment of a known right." *Brochu,* 86 Ill.Dec. at 499, 475 N.E.2d at 878.

Lucht relies heavily on *Insurance Corp. of Ireland Ltd. v. Board of Trustees of S. Ill.*

*Univ.,* 937 F.2d 331 (7th Cir.1991), to argue that an insurance company waives its right to contest coverage by defending the insured without any sort of reservation of rights. In *Insurance Corp. of Ireland,* we summarized the three options available to an insurer desiring to dispute its duty to defend its insured: .

1. It can immediately seek a declaratory judgment of non-coverage;
2. It can provide a defense for the insured under a reservation of rights; or
3. It can completely refuse to do either of the above at the peril of being found in breach of its duty to defend.

*Id.* at 337. Lucht argues that if an insurance company provides a defense without getting a reservation of rights agreement, it waives any argument concerning lack of coverage under the policy.

The *Insurance Corp. of Ireland* case, however, is readily distinguishable from this case. In *Insurance Corp. of Ireland,* the insurer approved of the insured's selection of a defense firm and paid part of their fees without making a reservation of its rights. The insured prevailed, but the insurer later refused to pay for the defense it had authorized. There we found that the insurance company had impliedly waived its right to contest its obligation to defend its insured— its approval of the insured's defense and partial payment of attorney fees without any reservation of rights were inconsistent with its subsequent denial that it was obligated to pay for the defense.

In contrast, while Essex did undertake Stage 2's defense without a written reservation of rights, Stage 2 was aware nearly from the start of Lucht's suit that it was not covered under the insurance contract. Moreover, Essex never asked Stage 2 to reimburse it for legal fees; Essex simply denies that it is liable under the policy to indemnify Stage 2. We agree with the district court that *Insurance Corp. of Ireland* should be limited to cases in which the insurer defends the insured without a reservation of rights and then tries to contest its duty to pay for the defense. An insurer that begins to defend its insured without a written reservation of rights does not always waives its right to contest policy coverage later.

### B. Equitable Estoppel

■ Lucht's equitable estoppel claim poses a more interesting question. Estoppel is based upon an insurer's conduct or representations which mislead an insured to his detriment. If an insurer undertakes its insured's defense without reserving its rights to contest coverage and that undertaking results in prejudice to the insured, the insurer may be estopped from later denying coverage. *Brochu,* 86 Ill.Dec. at 499, 475 N.E.2d at 879. Whether the insured has been prejudiced is a question of fact. Prejudice is an essential prerequisite to estoppel and will not be presumed. *Maryland Casualty Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 29 (1976).

■ In this case, Lucht has failed to raise a genuine issue of material fact that Essex's conduct prejudiced Stage 2 such that Essex should be equitably estopped from denying coverage. We are satisfied that Stage 2 knew from the inception of Lucht's suit that its insurance contract with Essex would not cover any liability arising from the suit. Both Gifford and Scheer admitted that they expected or anticipated a reservation of rights letter from Essex. Therefore, they cannot now claim that Essex's conduct misled them or that they reasonably relied to their detriment on the absence of a written reservation of rights.

Lucht asserts, however, that Stage 2 suffered prejudice because Essex controlled its defense. This assertion of prejudice is inadequate for several reasons. First, throughout the *Lucht* litigation, Stage 2 had its own counsel to protect its interests. Gifford actively monitored the progress of the litigation and stayed in close contact with the Sorling attorneys. Moreover, neither Lucht nor Stage 2 ever complained that Sorling's representation of Stage 2 was defective in any way. Lucht speculates that Stage 2 would have settled the suit if it had controlled its own defense because it would have disclosed greater information to Lucht about its weak financial condition. However, there is no showing that Stage 2's private counsel would have conducted the defense differently. Stage 2 had nine months after Essex filed its declaratory judgment action to attempt to settle Lucht's suit or to assert a different defense strategy if it truly felt prejudiced by

Essex's conduct. It did neither and instead seemed content to allow Essex to continue handling its defense.

For all of these reasons, we find there is no factual basis from which to infer prejudice to Stage 2. Mere delay in formally raising the issue of non-coverage is not sufficient to establish prejudice by clear, concise and un-equivocal evidence. *Brochu*, 86 Ill.Dec. at 500, 475 N.E.2d at 879. Since the record establishes that Stage 2 was not prejudiced by Essex's actions, summary judgment for Essex is appropriate. *See Mid–State Sav. & Loan Ass'n v. Illinois Ins. Exch., Inc.*, 175 Ill.App.3d 265, 124 Ill.Dec. 715, 719, 529 N.E.2d 696, 700 (Ill.App.Ct.1988), *appeal denied*, 124 Ill.2d 556, 129 Ill.Dec. 150, 535 N.E.2d 915 (1989). Accordingly, we find that, as a matter of law, Essex had no obligation under its insurance policy to indemnify Stage 2 for any liability arising from Lucht's suit. Consequently, Lucht cannot claim any benefit under the policy to satisfy his judgment against Stage 2.

### III.

For all of the reasons above, we AFFIRMED the grant of summary judgment in favor of Essex.