FASHION TANNING COMPANY, INC., Respondent, v FULTON COUNTY ELECTRICAL CONTRACTORS, INC., et al., Defendants, and STEWART-WARNER CORPORATION, Appellant. (Action No. 1.) (And Two Third-Party Actions.)

HERMANN LOEWENSTEIN, INC., et al., Respondents, v STEWART-WARNER CORPORATION, Appellant, et al., Defendants. (Action No. 2.) (And Three Third-Party Actions.)

Third Department, January 12, 1989

APPEARANCES OF COUNSEL

*Noonan, Troue, Gutermuth & O'Connor (Thomas J. O'Connor* of counsel), for appellant.

*Ainsworth, Sullivan, Tracy, Knauf, Warner & Ruslander (John W. Bailey* of counsel), for Fashion Tanning Company, Inc., respondent.

### OPINION OF THE COURT

YESAWICH, JR., J.

On July 31, 1979, a fire destroyed the building and contents of a leather tannery owned by plaintiff Fashion Tanning Company, Inc. (hereinafter Fashion Tanning), as well as cowhide products owned by plaintiffs Hermann Loewenstein, Inc., Leather Designs, Ltd. and Langloe Leathers, Inc. (hereinafter collectively referred to as the leather plaintiffs), which were awaiting processing by Fashion Tanning. Lumbermens Mutual Casualty Company (hereinafter Lumbermens), the fire insurance carrier for Fashion Tanning, paid Fashion Tanning $400,000, the maximum payable under its fire policy, though

the cash value of the loss was estimated at $530,814 (with a replacement cost of $662,811). The leather plaintiffs were likewise insured against fire loss through Lumbermens and received $73,521.05, the total value of their loss. Lumbermens is involved in the subject litigation as subrogee of Fashion Tanning and the leather plaintiffs (hereinafter collectively referred to as plaintiffs) to the extent of these payments. Plaintiffs charge in their respective complaints that defendant Stewart-Warner Corporation (hereinafter Stewart-Warner), a manufacturer of spray booths used by Fashion Tanning at the time of the fire, negligently or defectively designed or manufactured the booths which in turn caused the fire responsible for their losses.

Stewart-Warner moved for partial summary judgment based upon the fact that its liability insurance carrier, American Motorist Insurance Company (hereinafter American), is a member, along with Lumbermens, of the Kemper Group of insurance companies. Stewart-Warner maintained that within the Kemper Group management, premiums, losses and expenses were shared to such an extent that Lumbermens and American should be considered one and the same insurance company for the purpose of applying the equitable public policy, formally articulated by the Court of Appeals in *Pennsylvania Gen. Ins. Co. v Austin Powder Co.* (68 NY2d 465), that a subrogee is prohibited from recovering from its own insured. Alternatively, Stewart-Warner sought to have Lumbermens joined as a necessary party plaintiff and leave to amend its answers to assert defenses of contributory negligence and assumption of the risk based upon Lumbermens' claimed negligence associated with issuance of the fire loss policy to Fashion Tanning.

Supreme Court denied summary judgment, holding that *Pennsylvania Gen. Ins. Co. (supra)* forecloses a subrogation suit only where the subrogor and the defendant are both insured under the very policy giving rise to the subrogation. The court also denied the alternative relief requested on the ground that, even if Lumbermens was a necessary party, the culpable conduct attributed to it cannot be imputed to its subrogor, Fashion Tanning. Stewart-Warner appeals.

■ Courts are constrained to make determinations on the narrowest of available grounds to the end that only issues necessarily raised are decided, thereby avoiding the issuance of advisory opinions *(see generally, Cuomo v Long Is. Light.*

*Co.,* 71 NY2d 349, 354; 4 NY Jur 2d, Appellate Review, § 325, at 417). This rule, without more, dictates an affirmance, for Stewart-Warner, the moving party seeking summary judgment, failed to supply proof in admissible form *(see, Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065, 1067) that Lumbermens and American are one and the same insurance company, a prerequisite to invoking the concept fashioned in *Pennsylvania Gen. Ins. Co. (supra).* Stewart-Warner's only proof of corporate identity is its attorney's affirmation "[u]pon information and belief" that American and Lumbermens "are under common management and share premiums, losses and expenses under a pooling arrangement". Since the affiant was without personal knowledge, his affirmation is of no probative value *(see, Sutton v East Riv. Sav. Bank,* 55 NY2d 550, 553). Even if it was sufficient, the affidavit by one of Lumbermens' officers to the effect that, though they are members of the Kemper Group, Lumbermens and American are distinct corporate entities creates a factual dispute sufficient to resist summary judgment.

 Although this conclusion makes the posture of this case such that application of *Pennsylvania Gen. Ins. Co. (supra)* is now academic, the question presented appears to us to be one of substantial public importance and likely to occur with some frequency; accordingly, we deem it advisable to confront it in the interest of judicial economy *(see, Matter of Gold v Lomenzo,* 29 NY2d 468, 475-476). Even assuming, arguendo, that Lumbermens and American (hereinafter collectively referred to as the Kemper Group) are one and the same insurance company, the finely drawn holding of *Pennsylvania Gen. Ins. Co.* is inapplicable to the facts at hand, for unlike the defendant Austin Powder Company in *Pennsylvania Gen. Ins. Co.,* Stewart-Warner's status is not that of an additional insured of the fire policy underlying the Kemper Group's subrogation claim *(see, Pennsylvania Gen. Ins. Co. v Austin Powder Co.,* 68 NY2d 465, 473, *supra).* The holding there derives from the well-aged and firmly entrenched principle that a subrogee cannot recover from its subrogor because a party may not sue itself *(see, Phoenix Ins. Co. v Erie Transp. Co.,* 117 US 312, 321-322). While this principle was applied to the additional insured in *Pennsylvania Gen. Ins. Co.,* that was indeed fitting because to have allowed the subrogee, Liberty Mutual Insurance Company, to proceed against its additional insured would have constituted judicial approval of a direct breach of the carrier's contractual obligation to defend its

additional insured *(see, Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,* at 472).

Stewart-Warner urges that *Pennsylvania Gen. Ins Co. (supra)* should be broadly applied to encompass the holding in *Home Ins. Co. v Pinski Bros.* (160 Mont 219, 500 P2d 945), where the insurer was prohibited from pursuing a subrogated property damage claim because the insurer's wholly owned subsidiary was the defendant's comprehensive liability carrier. However, we find the approach taken by the court in *Transport Trailer Serv. v Upjohn Co.* (506 F Supp 442) more appealing.

Beginning with the concerns voiced in *Pennsylvania Gen. Ins. Co. (supra)* we note that since we are dealing with two distinct insurance policies we are not faced with a situation where the defendant purchased the policy under which the carrier asserts subrogation *(cf., Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,* at 471). Rather, Stewart-Warner purchased liability coverage, independent of plaintiffs' property insurance, at a level it deemed appropriate. On the record before us, it would be utter speculation to assume that the Kemper Group subsidized its property damage coverage with premiums from its liability policies *(cf., Stafford Metal Works v Cook Paint & Varnish Co.,* 418 F Supp 56). More importantly, the instant matter does not involve a breach of Stewart-Warner's insurance contract. Stewart-Warner will only be liable for its deductible, which is $100,000, and, in the unlikely event that the maximum coverage secured of $1,000,000 is exceeded, it will be liable for the excess, which is the limited exposure for which it contracted with the Kemper Group. Any potential conflict of interest may be avoided by the simple expedient of allowing Stewart-Warner to retain independent counsel at its insurer's expense. Furthermore, if privileged information obtained from American is disclosed to plaintiffs, should that occur, that is not an inhibiting circumstance, for such conduct would undoubtedly incite an action by Stewart-Warner against American *(see, Transport Trailer Serv. v Upjohn Co., supra,* at 444).

On the other hand, barring the subrogated claims might provide Stewart-Warner with an unbargained for, unpaid for windfall in that the amount by which its deductible is reached by plaintiffs could conceivably be lessened. Although it appears that Stewart-Warner stands to lose at most its $100,000 deductible, it is instructive to consider the impact if Stewart-Warner's allegedly defective product resulted in $2 million

worth of damages. Surely, Stewart-Warner's liability to plaintiffs' subrogee for damages the subrogors suffered by reason of Stewart-Warner's product which are in excess of the latter's liability coverage cannot fairly depend upon the fortuity that plaintiffs' insurer is the Kemper Group. If that were so, a potential defendant could contrive to avoid being held accountable for the full measure of its product liability by merely securing small liability policies from a host of carriers, thereby frustrating any subrogation action being brought against it by any of those carriers.

■ Turning to the alternative relief requested, we find unconvincing Stewart-Warner's contention that Lumbermens should be impleaded so that its alleged negligence in underwriting plaintiffs' risks may be taken into account to reduce damages pursuant to CPLR 1411. To begin with, Lumbermens is not the real party in interest in the action commenced by Fashion Tanning because Fashion Tanning received only a partial recovery (see, e.g., Rockaway Blvd. Wrecking & Lbr. Co. v Raylite Elec. Corp., 25 AD2d 842, 843). More to the point, Stewart-Warner misapprehends the nature of a subrogation claim. Lumbermens as subrogee stands in the place of the subrogors, to whom the action still belongs (see, Liberty Mut. Fire Ins. Co. v Perricone, 54 AD2d 975). Actionable negligence by Lumbermens must necessarily have its origin in the breach of a duty running to plaintiffs or Stewart-Warner. Any failure on Lumbermens' part, as charged by Stewart-Warner, to inspect the insured premises or to require fire control equipment is, if anything, a breach of a duty owed to Lumbermens' shareholders, not to the parties herein (see, Matter of James v State of New York, 90 AD2d 342, 344, affd 60 NY2d 737).

KANE, J. P., MIKOLL, LEVINE and HARVEY, JJ., concur.

Order affirmed, with costs.