**In re The ENSTAR GROUP, INC., Debtor.**

**Bankruptcy No. 91–02618–APG.**

United States Bankruptcy Court, M.D. Alabama.

June 9, 1994.

**174**

J. Marbury Rainer, M. Banks Neil, IV, Parker, Hudson, Rainer & Dobbs, Atlanta, GA, for debtor.

Dan A. Bailey, Arter & Hadden, Columbus, OH, for claimant.

## OPINION ON OBJECTION TO CLAIMS OF WILLIAM GAUNTT AND AARON ARONOV

A. POPE GORDON, Bankruptcy Judge.

The Enstar Group, Inc. filed an objection, as amended, to the unsecured claims of William Gauntt and Aaron Aronov.[1]

The parties submitted the objection to the court based on briefs and arguments of counsel.

The claims arise out of Enstar Group's alleged obligation to indemnify Gauntt and Aronov from claims against them as directors and officers of Enstar Group.

The undisputed facts are as follows.

Enstar Group entered into an indemnity agreement with its directors and officers based upon Enstar's obligations under the corporate bylaws and certificate of incorporation of Enstar Group. Under the agreement, Enstar is obligated to indemnify Gauntt and Aronov for losses arising in connection with their employment as directors and officers of Enstar Group.

Enstar Group purchased liability insurance from Reliance Insurance Company to insure the directors and officers as well as to insure Enstar's obligation to indemnify the directors and officers.

The policy contains two distinct insuring clauses.

The first clause insures the directors against loss which the directors become legally obligated to pay as a result of any claim first made during the policy period against them for a wrongful act.

The second clause insures Enstar Group against loss for which Enstar is required to indemnify the directors or for which Enstar has indemnified, to the extent permitted by law, the directors from a claim against them for a wrongful act.[2]

The limit of liability for Reliance under the policy is $10 million.

The policy contains a $10 million retention applicable generally when Enstar Group is required or permitted by law to indemnify the directors and officers. The policy makes Reliance liable for all covered loss in excess of the retention up to the policy limit.

The policy period originally ran from March 1, 1989 to July 1, 1990. The period was extended by endorsement to July 1, 1991.

The policy contains a subrogation clause in which Reliance waives any right of subrogation against both Enstar Group and the directors.

Shareholders of Enstar Group filed numerous civil actions against Enstar and its officers and directors, including Gauntt, Aronov, and Friedman (another Enstar director), alleging wrongful acts.[3] The actions were con-

---

1. The court reserved limited jurisdiction in the confirmed chapter 11 plan, as modified, to determine objections to claims.

2. The second insuring clause is entitled "Company Reimbursement" and states in full as follows: The Insurer will pay on behalf of the Company all Loss for which the Company is required to indemnify or for which the Company has, to the extent permitted by law, indemnified the Director and Officers, for any Loss resulting from any claim or claims first made during the policy period against the Directors and Officers, individually or collectively, for a Wrongful Act.

3. The shareholders alleged negligent misrepresentations and violations of section 10(b) of the Securities Exchange Act of 1934 and the Racketeer Influenced and Corrupt Organizations Act (RICO).

solidated in the United States District Court for the Middle District of Alabama.

Enstar filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 31, 1991.

Gauntt and Aronov filed claims in the bankruptcy case seeking indemnification for costs incurred in connection with the civil litigation.[4] The claims were based on Enstar's asserted obligations under the indemnity agreement, corporate bylaws, and articles of incorporation.[5]

In October 1993, Gauntt, Aronov, and Friedman settled the claims against them in the civil litigation in the collective amount of $6,434,000.00.

Reliance Insurance Company paid the collective settlement amount for Gauntt, Aronov, and Friedman. Reliance paid $1,230,193.37 for defense costs incurred by Gauntt and Aronov in connection with the civil litigation.[6]

Gauntt, Aronov, Friedman, and Reliance Insurance Company executed a mutual release of liability under the policy which became effective with the settlement of the civil litigation. Enstar Group was not a party to the mutual release.

The mutual release states that the settlement amount and defense costs were paid under the insurance policy:

> WHEREAS, the Insurer has agreed to contribute $6,434,000 ... under its Directors and Officers Liability Policy ... for the policy period March 1, 1989 to July 1, 1990 ...

> WHEREAS, the Insurer elected to advance the reasonable costs and expenses incurred by the ... Insureds pursuant to the terms of the D & O Policy ... [7]

The mutual release preserved the right of Gauntt and Aronov to indemnification from Enstar, if any, including the right of Reliance to pursue such indemnification claim by "subrogation."[8]

In February 1994, the estates of Gauntt and Aronov executed instruments assigning to Reliance the claims of the estates for indemnification from Enstar Group.

The claims are set forth in the proofs of claim, as amended, filed in the bankruptcy case.[9]

---

4. Gauntt and Aronov filed proofs of claim in this case on September 23, 1991. The claims were filed as contingent, unliquidated, unsecured claims. Gauntt and Aronov amended the claims three times as the costs of the civil action accrued.

5. Copies of the indemnity agreement and corporate bylaws were attached to the proofs of claim filed July 22, 1992. The last amended proofs of claim filed November 1993 did not mention the indemnity agreement and were predicated solely upon the corporate bylaws and articles of incorporation.

6. Reliance paid a total of $7,664,193.37. The last amendments to the claims were filed in November 1993 in the amount of $7,631,662.57, which included only $1,197,662.57 of the defense costs.

7. The policy gave Reliance the option to advance these litigation expenses:

> The Insurer may at its option and upon request, advance on behalf of the Directors or Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay the Insurer, upon demand, all monies advanced by virtue of this provision.

In the mutual release, Reliance released the right under the policy to recover these litigation expenses from Gauntt and Aronov.

8. As stated in text *supra*, Enstar Group was not a party to the mutual release. Specifically, the release states as follows:

> the parties hereto expressly preserve and do not impair in any way any and all rights to indemnification from Entsar [sic] ... for any loss incurred in connection with the [civil litigation], including but not limited to the rights, if any, of [Reliance] to be subrogated to the [directors'] rights of indemnification for such loss.

9. The claims, as amended, seek recovery of the settlement amount as well as the defense costs incurred by Gauntt and Aronov. The last amendments to the claims include Reliance as a creditor along with Gauntt and Aronov though the amendments state no basis for the addition of Reliance. As stated in text *supra*, Gauntt and Aronov did not assign their claims to Reliance until February 1994, well after Reliance was added as a creditor.

Reliance seeks to recover from Enstar Group the payments made for Gauntt and Aronov under two theories—assignment and subrogation.

## Assignment

■ Reliance first asserts that Reliance holds by assignment the indemnification claims of Gauntt and Aronov against Enstar Group.[10]

The claims of Gauntt and Aronov are dependent on their rights under the indemnity agreement, the corporate bylaws, and the articles of incorporation.[11]

The express purpose of the indemnity agreement is to provide the directors and officers with indemnification to the "fullest extent permitted by law":

> WHEREAS, the Company has previously caused its Certificate of Incorporation and By-laws to be amended so as to limit the liability of and broaden the indemnification rights of its Directors and Officers as permitted under recent amendments to the Delaware General Corporation Law; and,
>
> WHEREAS, the Company is desirous of providing its Directors and Officers with limitation of liability and indemnification to the fullest extent permitted by law....

However, Enstar Group is not liable under the agreement to indemnify the directors and officers to the extent the directors and officers are paid by insurance.[12]

Because the claims of Gauntt and Aronov were paid in full by insurance, Enstar Group has no liability under the indemnity agreement to indemnify Gauntt, Aronov, or the assignee—Reliance Insurance Company.

■ Reliance argues, however, that it seeks indemnification solely under the corporate bylaws and not under the indemnity agreement. Reliance quotes the following provision from the indemnity agreement:

> Nothing herein shall be deemed to diminish or otherwise restrict the Indemnitee's right to indemnification under any provision of the Certificate of Incorporation, *By-laws,* vote of shareholders or disinterested Directors, or under the General Corporation Law of Delaware or any other applicable law. On the contrary, the rights granted to Indemnitee hereunder are intended to protect Indemnitee to the fullest extent permitted by law and shall be cumulative and in addition to any rights that Indemnitee may have from any other source (emphasis added).

This quoted provision references the scope of the right of the directors and officers to indemnification generally. It in no way prevents the directors and officers from specifically agreeing not to enforce the right against Enstar Group once the claim has been satisfied by a "valid and collectable insurance policy."[13] The indemnity agreement controls the contractual relationship between Enstar Group and its directors. Reliance may not disregard the limitation con-

---

**10.** The court notes that the "assignment" did not occur until well after the mutual release and payments by Reliance for Gauntt and Aronov and that the assignment does not appear to have been consideration for the payments despite the language in each:

> FOR VALUE RECEIVED, the undersigned ... hereby assigns to Reliance Insurance Company ... to the extent of expenses incurred and payments made by the Company on behalf of and for the benefit of ... [the Estates of Gauntt and Aronov] ... the Estate's right, title and interest in, to and under the Estate's claims against The Enstar Group, Inc. ... that are set forth in the amended proof of claim filed in the Chapter 11 Case on or about November 19, 1993 ...

**11.** The indemnity agreement was executed in 1987 by Enstar Group's predecessor in interest

and the directors and officers, including Gauntt and Aronov.

**12.** The indemnity agreement states as follows:

> 3. LIMITATIONS. The Company shall not be liable under this Agreement to make any payment in connection with any claim:
>
> (a) for which payment is actually made to the Indemnitee under a valid and collectable insurance policy, except in respect of any excess beyond the amount of payment under such insurance[.]
>
> Neither party has asserted that the insurance policy was either invalid or uncollectible.

**13.** Indeed, Enstar Group *purchased* the policy pursuant to which the directors and officers were paid.

tained in the agreement.[14]

Gauntt and Aronov had no rights to indemnity against Enstar Group remaining after Reliance paid the settlement amount and the defense costs of the civil litigation.[15]

Reliance, therefore, received no rights against Enstar Group under the purported assignment of indemnification rights from Gauntt and Aronov.[16]

14. The agreement lists several instances in which Enstar Group will not be liable under the agreement for otherwise indemnifiable claims.

15. The court has considered Gauntt and Aronov's indemnification rights independently from rights arising under the insurance policy. The indemnification rights arise by law and agreement between the directors and Enstar Group; the indemnification rights do not arise under the terms of the policy with Reliance Insurance Company.

16. Reliance further contends that *The Monarch Insurance Company of Ohio v. Siegel*, 634 F.Supp. 1252 (N.D.Ind.1986) supports its contention that it is entitled to proceed by assignment.

However, in *Monarch*, the *insurance policy* expressly granted the insurance company the option to proceed either by assignment or subrogation. In the case *sub judice*, the insurance policy is silent regarding any right to proceed by assignment, and Reliance waived its right to proceed by subrogation.

Moreover, in *Monarch*, the insurance company received by assignment *rights different and in addition to* those it could receive by subrogation. Reliance, however, attempts to assert by assignment *rights identical to those it would otherwise assert by subrogation* if it were entitled to subrogation under the policy. *Cf. Foshee v. Lloyds, New York*, 619 F.2d 1104, 1110 (5th Cir.1980):

What the laws and public policy of Alabama eschew with respect to subrogation applies with equal force to attempted assignments that have the effect of a subrogation.... 'For the same reasons [that] it cannot recover as a subrogee, an insurer, in general, should not be able to recover as an assignee or transferee.' *Foshee*, 619 F.2d at 1110 (quoting language from the lower court's decision). *See also Integrity Ins. Co. v. Davis*, 116 N.J.Super. 417, 282 A.2d 452 (Dist.Ct.1971) (policy contained waiver of subrogation). However, in *Foshee* and *Integrity* there was no dispute that the amount paid was within the policy coverage.

Reliance cannot avoid the express waiver of subrogation contained in the insurance policy. Allowing Reliance to proceed by assignment would effectively deny Enstar the benefit of the policy it purchased from Reliance.

17. Reliance attempts to argue that it is proceeding solely under assignment and not under subrogation. However, to the extent Reliance is

## Subrogation

Reliance next contends that the waiver of subrogation does not prevent Reliance from enforcing Enstar's alleged liability for the $10,000,000 retention.[17]

The parties dispute whether the retention was applicable to the payments made by Reliance for Gauntt and Aronov.[18]

seeking to enforce the retention, Reliance is seeking to enforce a right against Enstar Group which arises solely under the insurance policy. The specific terms of the policy control the relationship of Enstar Group and Reliance established by the policy. *The Monarch Insurance Company of Ohio v. Siegel*, 634 F.Supp. 1252 (N.D.Ind.1986).

For an interesting discussion of subrogation law, see *Commercial Union Ins. Co. v. Postin*, 610 P.2d 984 (Wyo.1980).

18. The retention is applicable generally when Enstar Group is required or permitted by law to indemnify the directors. The parties dispute whether Enstar Group was liable to indemnify Gauntt and Aronov. Reliance made the payments without first seeking a determination whether the conduct of Gauntt, Aronov, and Friedman met the applicable standard for indemnification under the bylaws and the indemnity agreement.

The first insuring clause of the policy, as amended by endorsement 8, states as follows regarding applicability of the retention:
If the Company is permitted or required by law to ultimately indemnify a Director or Officer, or to advance costs and/or defense expenses on their behalf, and does not in fact do so *other than for reason of the Financial Insolvency of the Company*, then the Insurer shall pay all loss on behalf of the Director or Officer, subject to the ... [retention] ... (emphasis added)
The policy defines financial insolvency as the "status of the Company as a debtor as that term is defined and used within the provisions of Title 11, United States Code, Bankruptcy."
Enstar Group contends that the retention was not applicable because of Enstar's insolvency irrespective of any indemnity obligation. Reliance contends that the insolvency provision is not applicable because it was deleted by a subsequent endorsement effective July 1990.
In addition, Reliance contends that it is seeking to enforce the retention under the second, not the first, insuring clause of the policy. *See supra* note 2. However, the purpose of each clause is to give *Enstar* or the *directors* a right to payment from Reliance. Neither clause gives Reliance a right to payment from Enstar Group. If Reliance is to enforce a right of payment from Enstar Group, it must do so by subrogation.

However, whether or not the retention was applicable, the provision waiving subrogation is absolute and unconditional:

> In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all rights of recovery therefore [sic] ... *It is further agreed that the Insurer waives any right to subrogate against the Company* and the Directors and Officers of the Company (emphasis added).

Reliance cites the following three cases to support its contention: *Transport Trailer Serv., Inc. v. The Upjohn Co.*, 506 F.Supp. 442 (E.D.Pa.1981); *Fashion Tanning Co., Inc. v. Fulton County Elec. Contractors, Inc.*, 142 A.D.2d 465, 536 N.Y.S.2d 866 (N.Y.App. Div.1989); and *Chavez v. Valmar Textile Processing, Inc.*, 1991 WL 42999 (S.D.N.Y. 1991).

Not one of the three cases supports the contention advanced by Reliance that the waiver of subrogation is not applicable to the payments made by Reliance.

Both *Transport* and *Fashion Tanning* are factually inapposite for two reasons.

First, the subrogor and the defendant in each case were insured under *separate policies*.[19] Therefore, there was no contractual relationship between the insurance company and the defendant *under the policy pursuant to which the company asserted rights of subrogation*.[20] The courts applied general principles of insurance law in declining to impose an automatic bar to subrogation.

However, in the case *sub judice*, there is a contract which defines the relationship between the parties. Therefore the court must look to the contract—not general principles of insurance law—to determine the rights and duties of the parties. The contract expressly waived subrogation rights.

Second, neither *Transport* nor *Fashion Tanning* involved a waiver of subrogation.

In the case *sub judice*, Reliance waived subrogation rights in the very policy pursuant to which it currently asserts subrogation.

*Chavez* is factually similar in that the subrogor and the defendant were "both insured under the very policy giving rise to the subrogation."[21]

In *Chavez*, Valmar Textile Processing, Inc. asserted a claim for indemnity against Windsor Textile Processing, Inc. Windsor had purchased a policy of insurance from The Travelers Companies in the amount of $1 million to insure its indemnity obligation to Valmar. The policy named both Valmar and Windsor as insureds. Windsor contended that Valmar could not sue Windsor because both were insured under the same policy. The court on motion for summary judgment held that Valmar's indemnity claim was not barred to the extent Valmar's claim *exceeded* the policy limit. The court reasoned as follows:

> An insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered. This rule applies even where the insured has expressly agreed to indemnify the party from whom the insurer's rights are derived and has procured separate insurance covering the same risk.

The court did not allow Valmar to recover from Windsor amounts covered under the policy purchased by Windsor.

*Chavez* does not support Reliance's argument because *Chavez* does not reference any waiver of subrogation.

> The court in *Fashion Tanning* noted that "since we are dealing with two distinct insurance policies we are not faced with a situation where the defendant purchased the policy under which the carrier asserts subrogation." *Fashion Tanning*, 142 A.D.2d at 470, 536 N.Y.S.2d 866. The court also noted that refusing to bar subrogation would not "involve a breach of [the defendant's] insurance contract." *Id.*

---

**19.** In *Transport,* the *same carrier* insured both the subrogor and the defendant but under *separate policies.* In *Fashion Tanning, separate carriers* insured the subrogor and the defendant under *separate policies.*

**20.** The court in *Transport* noted that the "right of the insurance company to assert a subrogation claim against its insured is *determined by the insurance contract* between the parties and the public policy considerations which aid in its interpretations." *Transport,* 506 F.Supp. at 443 (emphasis added).

**21.** *Fashion Tanning,* 142 A.D.2d 465, 536 N.Y.S.2d 866.

In the case *sub judice*, Reliance expressly and unconditionally waived *any* right to subrogate against Enstar Group. The waiver by Reliance is broad enough to include the payments made for Gauntt and Aronov—whether or not the retention was applicable.[22]

Reliance could have disputed policy coverage by exercising any of the following three options.[23]

Reliance could have filed an action for declaratory judgment prior to making the payments to determine whether the retention was applicable. Reliance did not do so.[24]

Reliance could have paid the money under a reservation of its right to determine whether the retention was applicable. Reliance did not do so.[25]

Reliance could have refused to pay "at the peril of being found in breach of its duty ..."[26]

Reliance cannot recover the money from Enstar Group. The claims filed by Gauntt and Aronov are due to be disallowed.

A separate order consistent with this opinion will enter.

### ORDER DISALLOWING CLAIMS OF WILLIAM GAUNTT AND AARON ARONOV

In accordance with the Opinion entered this day, it is hereby

ORDERED that the objection, as amended, filed by Enstar Group to the unsecured claims of William Gauntt and Aaron Aronov

is SUSTAINED, and the claims are DISALLOWED.

---

**22.** In *Chavez*, coverage under the insurance policy was presumed. If the retention was applicable to the payments made by Reliance, Reliance cannot recover from Enstar Group because it waived subrogation rights against Enstar Group in the insurance policy. If the retention was not applicable to the payments made by Reliance, Reliance cannot recover from Enstar Group under *Chavez* even absent the waiver of subrogation.

**23.** *See Insurance Corp. of Ireland, Ltd. v. Board of Trustees*, 937 F.2d 331, 337 (7th Cir.1991).

**24.** Despite Reliance's arguments to the contrary, Enstar's bankruptcy case did not prevent Reli-

ance from filing an action for declaratory judgment against Enstar Group. *See* Fed.R.Bankr. Proc. 7001(9). Moreover, Enstar's bankruptcy case did not prevent Reliance from filing an action for declaratory judgment against *Gauntt and Aronov*.

**25.** Even though Reliance initially reserved the right to recover the defense costs from Gauntt and Aronov, Reliance released the right in the mutual release.

**26.** *Insurance Corp.*, 937 F.2d at 337.