**RELIANCE INSURANCE COMPANY,**
Appellant,

v.

**The ENSTAR GROUP, INC., Appellee.**

**Civil Action No. 94–D–896–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 12, 1996.

J. Marbury Rainer, M. Banks Neil, II, Atlanta, GA, John R. Matthews, Jr., Montgomery, AL, for appellee.

Earl Terry Brown, Robert D. Segall, Montgomery, AL, Dan A. Bailey, John E. Hoffman, Jr., Columbus, OH, for appellant.

## MEMORANDUM OPINION AND JUDGMENT

DE MENT, District Judge.

Reliance Insurance Company ("Reliance") appeals the June 9, 1994, opinion and order entered by the United States Bankruptcy Court for the Middle District of Alabama, 170 B.R. 173. In said opinion and order, the bankruptcy court disallowed the claims of William Gauntt and Aaron Aronov made under a directors and officers' insurance policy ("D & O policy") and sustained appellee The Enstar Group's objections to those claims. The bankruptcy court's order constitutes a final judgment and, thus, is appealable pursuant to 28 U.S.C. § 158(a).[1]

■■■ The court finds that the bankruptcy court's findings of fact are not "clearly erroneous," as they are undisputed.[2] Thus, the court adopts said findings of fact in their entirety. Moreover, the court independently has reviewed the applicable law as applied to the facts and finds that the legal conclusions of the bankruptcy court are particularly well-reasoned.[3] Hence, the court likewise adopts the bankruptcy court's legal conclusions.

This dispute arises from The Enstar Group's (the insured) alleged obligation to reimburse Reliance (the insurer) for payments it made to Gauntt and Aronov for legal claims asserted against them in their capacity as officers and directors of The Enstar Group.[4] The D & O policy at issue in this case insured The Enstar Group's directors and officers directly for liability incurred in connection with the performance of their employment duties. Furthermore, this policy provided reimbursement coverage to The Enstar Group for its indemnity obligations to its directors and officers.[5] The policy provided $10 million dollars in coverage subject to a $10 million retention with respect to covered loss for which The Enstar Group was required or permitted to indemnify. The policy also contained a waiver of subrogation clause.

Upon Reliance's payment of Gauntt and Aronov's legal costs, Reliance, Gauntt and Aronov entered into a mutual release of liability. The mutual release "preserve[d]" the rights, "if any" of Gauntt and Aronov to seek indemnification from The Enstar Group and of Reliance "to be subrogated to" Gauntt and Aronov's indemnification rights. The Enstar Group was not a party to this mutual release.

Reliance bases it appeal on the same grounds urged below. That is, the issues for review are:

(1) Whether liquidated, unsecured claims of Gauntt and Aronov against The Enstar

---

**1.** 28 U.S.C. § 158(a) provides that final orders of a bankruptcy court shall be appealable to the district court located within the district in which the bankruptcy court serves.

**2.** The standard of review with respect to findings of fact is the "clearly erroneous" standard. *Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069, 1071 (11th Cir.1990). Findings of fact by the bankruptcy court are subject to reversal when "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

**3.** The bankruptcy court's conclusions of law are subject to *de novo* review, which requires the district court to independently examine the law and draw its own conclusions after applying the law to the facts without regard to the decision of the bankruptcy court. *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990).

**4.** Following numerous shareholder actions against The Enstar Group, as well as against its officers and directors, The Enstar Group filed in May 1991 a voluntary petition under Chapter 11. The claims asserted by Reliance arise from payments made in connection with the defense and settlement of certain of those shareholder actions against Gauntt and Aronov.

**5.** The Enstar Group's indemnity obligations arise from its articles of incorporation, bylaws and indemnity agreement between it and its officers and directors.

Group for indemnification of defense costs and settlement payments incurred in connection with their defense of various shareholder class actions brought against them as outside directors of The Enstar Group should be allowed; and

(2) whether Reliance may recover from The Enstar Group the payments it made for Gauntt and Aronov's defense costs and settlement amounts in the shareholder class actions either through subrogation or by assignment of Gauntt and Aronov's indemnification rights.[6]

### Assignment

■ The court agrees with the bankruptcy court's legal analysis and conclusion that the indemnity agreement cut off the indemnity rights of Gauntt and Aronov when their claims were paid through a "valid and collectable insurance policy." *See* June 9, 1994 Opinion, at 176 (quoting the indemnity agreement between The Enstar Group and its officers and directors). The court further concurs with the bankruptcy court's reasoning that the indemnity agreement is the "last word," so to speak, concerning the legal relationship between The Enstar Group and its officers and directors.

Here, Reliance sought to step in the shoes of Gauntt and Aronov. In that posture, Reliance's ability to receive reimbursement from The Enstar Group through indemnification was addressed and precluded in the specific terms and conditions of the indemnity agreement between Gauntt and Aronov and The Enstar Group. Reliance could receive no greater rights than those to which Gauntt and Aronov were entitled.[7] Hence, as stated by the bankruptcy court, said legal conclusions of which the court has adopted, "Gauntt and Aronov had no rights to indemnity against The Enstar Group remaining after Reliance paid the settlement amount and the defense costs of the civil litigation. Reliance,

therefore, received no rights against The Enstar Group under the purported assignment of indemnification rights from Gauntt and Aronov." *Id.* at 177 (footnotes omitted).

Reliance also argues that even if the court affirms the bankruptcy court's decision that Reliance cannot seek reimbursement from The Enstar Group through subrogation, such a finding does not preclude recovery by assignment. While the court agrees that subrogation is not necessarily an insured's *exclusive* remedy, the court nonetheless finds that for the reasons stated in the bankruptcy court's opinion, no right of assignment exists under the facts of this case.

Additionally, the undisputed facts reveal that Reliance chose to take a risk in advancing payment to Gauntt and Aronov instead of pursuing more secure legal alternatives. As the bankruptcy court pointed out, Reliance could have filed a declaratory action, "paid the money under a reservation of its right to determine whether the retention was applicable," or could have "refused to pay." *Id.* at 179. Risk often results in grave consequences, which unfortunately for Reliance is the case here.

### Subrogation

■ Reliance further contends that the bankruptcy court erred in its legal findings that Reliance unconditionally and absolutely waived its subrogation rights in the D & O policy and that this waiver prevented Reliance from seeking reimbursement from The Enstar Group. Reliance argues, in part, that the bankruptcy court misconstrued the three cases relied on by Reliance. After carefully reading these cases, the court agrees with the reasoning of the bankruptcy court, which is worthy of restating. Specifically, the bankruptcy court states:

Not one of the three cases supports the contention advanced by Reliance that the

---

6. These two issues are, in substance, the issues presented by Reliance in its appellate brief. *See* "Brief of Appellant," at 1–2. The second issue consumes the first, because Reliance argues that the claims of Gauntt and Aronov "should be allowed" through either assignment or subrogation.

7. Reliance, in essence, asks the court to rule that the mutual release between it and Gauntt and Aronov can void the contractual provisions of the bargained-for indemnity agreement between The Enstar Group and Gaunt and Aronov. Such a result is contrary to sound legal reasoning and fundamental contract principles.

waiver of subrogation is not applicable to the payments made by Reliance.

Both *Transport* and *Fashion Tanning*[8] are factually inapposite for two reasons.

First the subrogor and the defendant in each case were insured under *separate policies*. Therefore, there was no contractual relationship between the insurance company and the defendant *under the policy pursuant to which the company asserted rights of subrogation.* The courts applied general principles of insurance law in declining to impose an automatic bar to subrogation.

However, in the case *sub judice,* there is a contract which defines the relationship between the parties. Therefore, the court must look to the contract—not general principles of insurance law—to determine the rights and duties of the parties. The contract expressly waived subrogation rights.

Second, neither *Transport* nor *Fashion Tanning* involved a waiver of subrogation.

In the case *subjudice,* Reliance waived subrogation rights in the very policy pursuant to which it currently asserts subrogation.

*Chavez*[9] is factually similar in that the subrogor and the defendant were "both insured under the very policy giving rise to the subrogation."

In *Chavez,* Valmar Textile Processing, Inc. asserted a claim for indemnity against Windsor Textile Processing, Inc. Windsor had purchased a policy of insurance from The Travelers Companies in the amount of $1 million to insure its indemnity obligation to Valmar. The policy named both Valmar and Windsor as insureds. Windsor contended that Valmar could not sue Windsor because both were insured under the same policy. The court on motion for summary judgment held that Valmar's indemnity claim was not barred to the extent Valmar's claim exceeded the policy limit. The court reasoned as follows:

An insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered. This rule applies even where the insured has expressly agreed to indemnify the party from whom the Insurer's rights are derived and has procured separate insurance covering the same risk.

The court did not allow Valmar to recover from Windsor amounts covered under the policy purchased by Windsor.

*Chavez* does not support Reliance's argument because Chavez does not reference any waiver of subrogation.

In the case *sub judice,* Reliance expressly and unconditionally waived any right to subrogate against [The] Enstar Group. The waiver by Reliance is broad enough to include the payments made for Gauntt and Aronov—whether or not the retention was applicable.

June 9, 1994 Opinion at 178–79 (internal footnotes omitted).

The bankruptcy court also correctly noted that

[i]n Chavez, coverage under the insurance policy was presumed. If the retention was applicable to the payments made by Reliance, Reliance cannot recover from [The] Enstar Group because it waived subrogation rights against [The] Enstar Group in the insurance policy. If the retention was not applicable to the payments made by Reliance, Reliance cannot recover from [The] Enstar Group under Chavez even absent the waiver of subrogation.

*Id.* at 179 n. 22. Upon review of the bankruptcy court's specific findings and the arguments presented on appeal, Reliance has not demonstrated through argument or case authority that the bankruptcy court erred in its legal conclusion that Reliance was not entitled to recover from The Enstar Group under a subrogation theory.

---

8. *Transport Trailer Serv., Inc. v. The Upjohn Co.,* 506 F.Supp. 442 (E.D.Pa.1981); *Fashion Tanning Co., Inc. v. Fulton County Elec. Contractors, Inc.,* 142 A.D.2d 465, 536 N.Y.S.2d 866 (N.Y.App.Div.1989).

9. *Chavez v. Valmar Textile Processing, Inc.,* No. CIV.A. 86–1368, 1991 WL 42999 (S.D.N.Y. March 20, 1991).

## CONCLUSION

Accordingly, it is CONSIDERED, OR-DERED and ADJUDGED that the June 9, 1994, opinion and order entered by the United States Bankruptcy Court for the Middle District of Alabama be and the same are hereby AFFIRMED.

It is further CONSIDERED and OR-DERED that all costs herein incurred are taxed against appellant Reliance Insurance Company, for which let execution issue.